**WESTERN OIL FIELDS, INC.,**
**Plaintiff-Appellee,**

v.

**PENNZOIL UNITED, INC., Defendant-**
**Appellant.**

**No. 27601.**

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1970.

B. D. McKinney, Houston, Tex., for defendant-appellant; Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel.

John H. McElhaney, Dallas, Tex., for plaintiff-appellee; Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Tex., of counsel.

Before GEWIN, COLEMAN and DYER, Circuit Judges.

COLEMAN, Circuit Judge.

In 1961 Pennzoil and Western Oil Fields owned adjacent mineral leases. Pennzoil sought Western's lease so that a contemplated secondary recovery operation could be carried out on a large scale. No outright purchase of Western's lease could be arranged. However, Western did consider letting Pennzoil attempt secondary recovery over the whole tract in return for a share of the net profits.

The resulting *net profits operating agreement* provided that for a ten year term Pennzoil would guarantee Western the anticipated profits from *primary* recovery on its lease. Additionally, Western would receive a 35% interest in the net profits from *secondary* recovery. Pennzoil would receive the remaining 65% and it could charge normal monthly expenses not to exceed $3,200 to receipts from primary recovery.

Western now sues to recover a portion of the $800 per month *administrative overhead charges* admittedly withheld by Pennzoil since 1961. Further, Western sues for a declaratory judgment establishing that such charges should not be made until January 1, 1971.

The contract embodied several documents—some hand tooled and some boiler plate. Each side finds support in one of the documents. Western, believing that the contract forbade such administrative expenses, cites the boiler plate annex to the net profits operating agreement which reads at Point 12:

* Administrative Overhead—

Operator shall have the right to charge against the joint property the following overhead costs, which shall be in lieu of any charge for any part of the compensation or salaries of managing officers, including District and Division Superintendents, and of any part of the expense of Division, District or Field Officers of the Operator, and of Field Staff salaries and expenses when such staff employees are not engaged in activities directly connected with the property.

* Chargeable only from and after January 1, 1971, as to producing wells.

Pennzoil, on the other hand, insists that the various contract documents considered together create an ambiguity that is cured by reference to the individually drafted contract of sale where "operating and lifting costs" [in which administrative overhead is included] are authorized up to $3,200. Further, Pennzoil stresses that the parties understood that the asterisk provision was included to prevent a double charge, not to exclude any administrative charge altogether.

The case was submitted to the jury on special interrogatories. It found that the parties' "agreement in principle" did not include a monthly administrative overhead charge by Pennzoil before or after 1971. Judgment was entered that Western recover from Pennzoil 35% of $800 per month for each month from April 1, 1964, and ending when the judgment is paid or ending January 1, 1971, whichever date occurs first, together with interest on each monthly payment at the rate of 6% per annum; and, that Pennzoil shall make payments to Western of 35% of net profits from the secondary recovery operations.

Pennzoil's appeal is predicated on the theory that the ambiguity in the contract

is cured in Pennzoil's favor by the remainder of the contract and the extrinsic evidence offered by both sides. Further, Pennzoil argues that no proof was submitted that the net profits ever reached $800 in any given month and that the claim is time barred under Texas statutes. A final defense, reformation for mutual mistake, is not pressed on appeal.

On the face of the contract documents no arbitrary administrative overhead is allowable until 1971. Pennzoil seeks to avoid this construction by considering Paragraph 12, supra, as forbidding only an *optional* arbitrary charge and not the actual charges which Pennzoil claims are authorized elsewhere in the contract. Leaving aside for the moment the question of whether actual charges for administrative overhead are really authorized elsewhere, we confront Pennzoil's argument as to the bare effects of Paragraph 12. In the first place, the asterisk beside the caption for the whole paragraph indicates that the entire paragraph is displaced by the footnote typed in under the asterisk. Second, even if the footnote only supplemented Paragraph 12, there is no implication there that actual charges for administrative overhead can be levied instead of the forbidden arbitrary charge. The language "which shall be in lieu of any charge for any part of the compensation or salaries" places a heavy burden on Pennzoil to show that the contract authorizes the charges elsewhere.

The alleged ambiguity in the contract rests in the supposed conflict between Paragraph 12 in the annex to the operating agreement and the contract and operating agreement. In Article III of the contract Pennzoil is authorized to charge "lifting and operating costs" at a rate of $3,200 per month. Operating costs presumptively include administrative overhead, argues Pennzoil. Finally, Pennzoil argues that since Western was to be paid from net profits the contract's definition of that term should control. Article III subpart (e) defines net profits as the excess of gross revenues over "all costs and expenses". The defect in this argument is that these portions of the contract do not discuss or define administrative overhead. That item is treated solely in Paragraph 12.

While Pennzoil's arguments are plausible they treat the canons of contract construction somewhat cavalierly. Normally a court will give effect to all provisions of a contract and will harmonize the various provisions unless they are "necessarily repugnant". Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617 (1955); Howell v. Union Producing Company, 5 Cir., 1968, 392 F.2d 95. Here the allegedly conflicting provisions lack such repugnance. It is well settled that a special or more particular clause [Paragraph 12] must prevail over a general clause [Article III]. Fox Realty Company v. Montgomery Ward & Company, 7 Cir., 1942, 124 F.2d 710; Hol-Gar Manufacturing Corporation v. United States, 351 F.2d 972, 169 Ct.Cl. 384 (1965); Leopard v. Stanolind Oil & Gas Company, 220 S.W.2d 259 (Tex.Civ.Appeals, 1949). Error Ref. n. r. e. Further, the typewritten insertion like the asterisk clause should prevail over the printed matter. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 304 S.W.2d 267 (1957).

In the hope of demonstrating that all expenses under the contract are recoverable *ab initio*, Pennzoil cites the related case of Luling Oil & Gas Company v. Humble Oil & Refining Company, 144 Tex. 475, 191 S.W.2d 716 (1945). There the parties to a net profits agreement were contesting whether so-called "district expenses" were recoverable under the clauses allowing "all expenses of drilling, developing, operating and equipping said property". Although district expenses were held recoverable under the general clause, *Luling* does not necessarily establish that administrative overhead expenses are recoverable in a net profits agreement, but only that in the *Luling* contract scheme district expenses were "expenses of drilling". Here it is unnecessary to pinpoint whether administrative overhead is recoverable under the general clause since it is explicitly barred.

Finally, Pennzoil urges that extrinsic evidence satisfactorily explains the form the contract took. They urge that the negotiating parties, believing that $800 for administrative overhead was included in the $3,200 charge, included the asterisk provision to prevent a double charge. Nothing is more fundamental than that terms of the writing rather than the subjective intent of the parties become conclusive in an integrated writing, § 230, Restatement of the Law of Contracts. Thus the four corners of the writing preclude any resort to what the parties may have understood *before* the contract.

Pennzoil raises anew on this appeal the question of whether there were any net profits from secondary recovery on which an award could be based. In the trial court Pennzoil represented that there was no issue as to damages and no such issue was presented to the jury. Pennzoil did not include in its motion for directed verdict a request for a verdict on damages nor did it mention the matter in its request for judgment.

Under the circumstances Pennzoil cannot belatedly attack the sufficiency of the evidence on the damage issue. Under Rule 50(a) "A motion for directed verdict shall state the specific grounds therefor". Where specific grounds are not assigned, the point is not properly preserved for review. Bruce Construction Corporation v. United States, 5 Cir., 1956, 237 F.2d 600; Rochester Civic Theatre, Inc. v. Ramsay, 8 Cir., 1966, 368 F.2d 748.

Articles 5527, 5529, Vernon's Ann. Revised Statutes of Texas provide:

"Article 5527: There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and *not afterward*, all actions or suits in court of the following description:

1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing.

\* \* \* \* \* \*

"Article 5529: Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

Where a contract provides for monthly payments and not a present sale of gas or oil, a cause of action accrues when any given monthly payment is due. Only those payments due more than four years before the suit was filed are barred. Phillips Petroleum Company v. Johnson, 5 Cir., 1946, 155 F.2d 185, cert. denied 329 U.S. 730, 67 S.Ct. 87, 91 L.Ed. 632; *Luling Oil*, 144 Tex. at 475, 191 S.W.2d 716; Foster v. Atlantic Refining Company, 5 Cir., 1964, 329 F.2d 485. Here the judgment is appropriately limited to the period from April 1, 1964 until March, 1968, when the suit was filed.

The judgment of the District Court is Affirmed.