### AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA

v.

### The UNITED STATES.

### No. 562–85C.

United States Claims Court.

April 10, 1987.

---

Jose Garcia-Pedrosa, Miami, Florida, atty. of record, for plaintiff.

Genevieve Holm, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

OPINION

YOCK, Judge:

This action is before the Court on cross-motions for summary judgment regarding the Government's liability under a maritime guarantee agreement. For the reasons discussed herein, the defendant's motion is granted, the plaintiff's motion is denied, and the complaint is to be dismissed.

*Facts*

On July 24, 1979, the Secretary of Commerce, acting through the National Marine Fisheries Service (NMFS) of the United States Department of Commerce, entered

into an agreement to guarantee a loan made by Bache, Halsy, Stuart, Shields, Inc. (Bache), to Darce, Inc. (Darce), to finance the construction of a fishing vessel, The Ramona. The guarantee contract was made pursuant to the authority contained in Title XI of the Merchant Marine Act of 1936, 46 U.S.C. § 1271 *et. seq.* (1936, as amended). On July 26, 1979, Bache assigned its guaranteed note to the plaintiff, (American Bankers Life Assurance Company). On the date of the assignment, the balance of the guaranteed promissory note was $591,400. Pursuant to the terms of the promissory note, Darce was to make monthly payments directly to American Bankers for a period of twenty years.

Some four years later, in 1983, Darce began to run into financial difficulties and failed to make several of its monthly payments when they became due. Specifically, Darce missed payment No. 44 which was due on March 24, 1983, but was not paid until June 29, 1983—ninety-four days late. Payments numbered 51, 52 and 53, due in the months of October, November, and December of 1983, were also missed and not paid until February 9, April 30, and June 22, 1984, respectively. Payment No. 51 was 106 days late payment No. 52 was 156 days late, and payment No. 53 was 148 days late.

The NMFS first became aware of Darce's late payments after it requested a loan status report from the plaintiff on May 31, 1984. By letter dated July 26, 1984, the Southeast Region of the NMFS notified the plaintiff that pursuant to the termination clause contained in the guarantee agreement, the entire loan guarantee had been terminated. The letter in pertinent part stated:

This responds to your Schedule of Direct Reduction Loan ledger which was received by this office on July 10, 1984.

As you recall, Mr. Brett Brunner from this office contacted you on May 31, 1984 reference this account and in order to establish not only the status of the loan balance but the status of payments received by American Bankers Insurance Group. According to your communica-

tion with Mr. Brunner on that date, it appeared that there may be a problem associated with the government guaranteed note number 5220 associated with this Title XI financing.

Under the guarantee agreement, the language in this instrument states that in the event of default, which has continued for 30 days in any payment, by the payor, in this case Darce, Inc., of any principle [sic] or interest due under the guaranteed note, the obligee shall have the right to demand in writing no later than 60 days from th date of a payment default, payment by the guarantor. The obligee's right to demand payment under the guarantee agreement, however, expires 90 days from the due date for the payment which is in default. In reviewing your accounting ledger, it appears that payment number 44, which was due on March 24, 1983, was not received by your office and posted until June 28, 1983. Therefore, this payment appears to be 94 days past due.

Payment number 51, which was due on October 24, 1983, was not received and posted until February 9, 1984 and this payment appears to be 106 days past due.

Payment number 52, which was due and payable on November 24, 1983, was not received and posted until April 30, 1984 and this payment appears to be 156 days past due.

Lastly, payment number 53, which was due and payable on December 24, 1983, was not received and posted until June 22, 1984 and was, therefore, 148 days past due.

Under the circumstances, it appears, according to your accounting ledger, that American Bankers Insurance Group lost its guarantee when payment number 44 was paid and receipted 94 days past the due date.

It appears that the present principle [sic] balance reference this account is $539,712. By copy of this letter, we are advising the Central Office in Washington, D.C. of the Region's findings associated with this matter.

By letter of August 14, 1984, the central office of the NMFS in Washington, D.C., concurred with the NMFS regional office's findings and determinations and advised the plaintiff:

In a letter dated July 26, 1984, Tom Allen of our Southeast Regional Office informed you that American Bankers Insurance Group had lost its Federal loan guarantee on Case No. OG–G–446, Darce, Inc.

The Guarantee Agreement, dated July 24, 1979, states specifically, "The obligee's right to demand payment under the guarantee expires 90 days from the due date for the payment which is in default." The payments due March 24, October 24, November 24, and December 24, 1983, were not paid within 90 days of the due date, and the obligee, American Bankers Insurance Group, did not demand payment under the terms of its guarantee within this period.

We concur with the decision of our Southeast Regional Office that American Bankers Insurance Group has lost its guarantee on this case. If you will provide us with a hold harmless agreement, we will assign our collateral documents to American Bankers Insurance Group. A sample hold harmless agreement is enclosed for your review.

The record in this case reveals no direct response by the plaintiff to these letters.

Meanwhile, Darce failed to pay the installment due on April 24, 1984, and failed to make any installment payments after that date. Nevertheless, on April 2, 1985, almost a year after Darce stopped making any payments on the promissory note, the plaintiff wrote a letter to the NMFS advising the Service that Darce was in default on its payments and demanding full payment of the balance of the note under its contract of guarantee with the NMFS. The letter stated:

As you know, American Bankers Life Assurance Company of Florida ("American Bankers") is the holder of the referenced Note, executed by Darce, Inc. and guaranteed by the United States of America under a written Guarantee and Guarantee Agreement. Pursuant to the terms of said Note, Guarantee, and Guarantee Agreement, you are hereby notified that Darce, Inc. has failed to make the payment due on January 24, 1985, and that said default has continued for more than thirty days. American Bankers has therefore exercised its option to accelerate the balance of the Note, consisting of the sum of $524,503., which is the balance due and owing immediately prior to January 24, 1985. Enclosed please find a copy of our notification letter to Darce, Inc., advising Darce, Inc. of the acceleration and demanding payment of said sum.

Pursuant to the terms of the Guarantee and Guarantee Agreement, demand is hereby made upon the United States of America, through the Secretary of Commerce, for payment of the guaranteed amount of $524,503. Should we fail to receive said sum forthwith, we shall institute legal proceedings for the collection of said sum.

After the Government refused to pay the balance due under its contract of guarantee, the plaintiff brought suit against Darce and the United States in the United States District Court for the Southern District of Florida. In that suit, it obtained a default judgment in the amount of $607,950 against Darce, which remains unsatisfied as of this date. *American Bankers Life Assurance Company of Florida v. Darce, Inc. and United States of America*, Docket No. 85–1217–CIV (Aug. 5, 1985). The District Court thereafter transferred the plaintiff's case against the United States to this Court.

### Discussion

The plaintiff's claim against the United States in this action is founded upon the proposition that a typewritten sentence contained in the guarantee agreement is inconsistent with and supersedes that part of the termination clause upon which the Government bases its refusal to satisfy Darce's loan obligation.

The guarantee agreement itself contains only four operative clauses, only two of

which are relevant to this action. The first operative clause (and the first relevant clause) deals with the *plaintiff/obligee's rights* under the guarantee agreement. Among other things, the obligee has the right to demand full payment on the guarantee in the event of payment default by the payor (Darce). The clause in its entirety reads as follows:

> In the event of default which has continued for thirty days, in any payment by the Payor of any principal or interest due under that certain Guaranteed Note (a "Payment Default") the Obligee shall have the right to demand in writing, no later than sixty days from the date of a Payment Default, .payment by the Secretary of the Guarantee. The Secretary must make payment in cash of the Guarantee within thirty days of receipt of a proper demand; *Provided, however,* the Secretary shall not be required to make payment under the Guarantee if prior to the time by which he must make payment he shall find that there was no such Payment default or that such Payment Default had been remedied prior to the date the demand was tendered. *The obligee's right to demand payment under the guarantee expires 90 days from the due date for the payment which is in default.* [Emphasis added to the last sentence to indicate the typewritten portion of the clause on which the plaintiff is basing its claim.]

The fourth clause of the agreement (and the second relevant clause here) is the so-called termination clause. As one might imagine, it deals with the several ways the guarantee agreement shall be terminated. The clause in pertinent part reads:

> The Guarantee with respect to the Guaranteed Note shall terminate in case, and only in case, one or more of the following events shall occur:
>
> \* \* \* \* \* \*
>
> (4) When the Payee shall have failed to demand payment of the Guarantee within sixty days after a Payment Default \* \* \*.

The plaintiff takes the position that the first clause with the typewritten language included should be interpreted as giving the plaintiff/obligee the right to demand payment under the guarantee within ninety days of *any* payment which is in default—each monthly payment default constituting a separate breach under the loan agreement. Further, because such an interpretation of the first provision conflicts with the obvious meaning of the termination clause, the plaintiff maintains that the contract is ambiguous and that the first clause should govern because it contains the typewritten sentence. Additionally, the plaintiff contends that because the ambiguity is apparent on the face of the document, the contract should be construed against the drafter—in this case, the Government. Finally, the plaintiff contends that even if it failed to give the Government timely notice of Darce's payment defaults, the delay should not discharge the guarantor's obligation entirely because the Government has not been prejudiced thereby.

The defendant, on the other hand, contends that the language in the guarantee agreement is unambiguous, that all of the clauses can be read harmoniously, and that, as such, the plaintiff's failure to provide timely notice of Darce's default discharged the United States from its entire guarantee obligation under the agreement at issue.

The Court finds that the Government is correct in these contentions.

 Although it is a well established principle of contract interpretation that typewritten information "should prevail over the printed matter," *Western Oil Fields, Inc. v. Pennzoil United, Inc.,* 421 F.2d 387, 389 (5th Cir.1970), the first step in any case involving an alleged ambiguity is to ascertain analytically whether an ambiguity exists. *Mountain Home Contractors v. United States,* 192 Ct.Cl. 16, 20–21, 425 F.2d 1260, 1263 (1970); *Newsom v. United States,* 230 Ct.Cl. 301, 304, 676 F.2d 647, 650 (1982); *Enrico Roman, Inc. v. United States,* 2 Cl.Ct. 104, 106 (1983). In determining whether a contract is rendered ambiguous by possibly conflicting provisions, the Court should attempt to construe the contract as a whole to see if it can give reasonable meaning to all of its provisions

to effectuate the spirit and purpose of the contract, rather than render portions of the contract inoperative. *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 591 F.2d 629 (1979); *Cherry Hill v. United States,* 7 Cl.Ct. 357 (1985). One clause should not be construed as being in conflict with another unless no other reasonable interpretation is possible. *Mason v. United States,* 222 Ct.Cl. 436, 615 F.2d 1343, *cert. denied,* 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 (1980).

As earlier indicated, the first clause, quoted above with the emphasized typewritten language, describes the obligee's rights to demand payment from the United States under the guarantee agreement in the event of the payor's (Darce's) payment defaults. A payment default is defined in the clause as a default in payment that has continued for 30 days after payment was due. The clause then lists other time frames in which the obligee must act, or the time frames in which the Secretary must act. The termination clause (fourth clause) describes four events—the occurrence of any one of which will terminate the guarantee entirely.

■ The plaintiff reads the first clause in isolation from the other clauses of the contract and implies that, because typewritten provisions generally prevail over printed ones, the other clauses of the agreement need not be examined to determine the reasonable interpretation of the first. However, as the Government points out, contract clauses are always to be construed together. *D. Moody and Company v. United States,* 5 Cl.Ct. 70 (1984). "[A]n interpretation which gives a reasonable meaning to all parts [of a contract] will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous or achieves a weird and whimsical result." *State of Arizona v. United States,* 216 Ct.Cl. 221, 235–36, 575 F.2d 855, 863 (1978); *Julius Goldman's Egg City v. United States,* 214 Ct.Cl. 345, 556 F.2d 1096 (1977), *aff'd,* 697 F.2d 1051, *cert. denied,* 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983). A court, normally, will give effect to all provisions of a contract and will harmonize the various provisions unless they are "necessarily repugnant." *Western Oil Fields, Inc. v. Pennzoil United, Inc., supra,* 421 F.2d at 389; *Howell v. Union Producing Co.,* 392 F.2d 95 (5th Cir.1968).

■ In reading the language used in this guarantee agreement, the Court simply does not find any ambiguity. The first clause deals with the obligee's rights to demand payment from the Government under its guarantee agreement in the event of a payment default by the payor (Darce). The clause defines "payment default," prescribes the procedures a claimant should follow in making a claim upon the guarantor, and states the number of days a claimant has to submit its claim as well as the number of days the guarantor has to pay the claim. The termination clause, on the other hand, describes the circumstances under which the entire agreement will be terminated. The typewritten sentence at the end of the first clause is not inconsistent with the termination clause, but actually complements it. It simply emphasizes within the first clause that the obligee has rights to demand payment from the United States under the guarantee agreement once there has been a payment default, but that those rights must be exercised within a specific time frame or risk the termination of the guarantee agreement. The time frame stated in the typewritten portion of the first clause (90 days from the date a payment was due) is the same time frame discussed in the termination clause (60 days from payment default which is 30 days from the date the payment was first due).

It is very clear that the typewritten portion of the first clause was placed in the guarantee agreement to emphasize that any payment default was a serious matter and that the plaintiff/obligee was under a contractual duty and obligation to notify the Government in a timely fashion about any such payment default. *See Everman National Bank v. United States,* 756 F.2d 865, 869–70 (Fed.Cir.1985). For its part, the Government would pay the guarantee in full upon the timely notification by the obligee of the payment default. However,

in the event the obligee did not live up to its part of the bargain to give the Government timely notification (*i.e.*, within 90 days of the date a payment was due), the guarantee agreement would terminate, and the Government would no longer be liable on the agreement. That is what happened in this case. The plaintiff/obligee did not live up to its part of the bargain. In fact, the plaintiff was simply negligent in managing this entire account and in its failure to notify the Government as the payment defaults occurred. Timely notice of the payment defaults was not given to the guarantor. Thus, the guarantee contract terminated under its own terms, and the Government in its letters of July 26, 1984 and August 14, 1984, merely confirmed the termination. The plaintiff cannot resurrect the guarantee agreement by a tortured and unreasonable interpretation of a small part of the agreement.

Accordingly, this Court can find no conflict between the two provisions in question; they can be harmonized. As a result, the termination clause is not superseded by the typewritten provision and the plaintiff is bound by its terms.

■ Plaintiff's argument to the effect that each payment default is only a partial default and does not negate the entire guarantee agreement is also off the mark. Plaintiff's argument would rewrite the agreement to state that the only money lost under the guarantee agreement would be those monthly payments where the plaintiff had failed to notify the Government within 90 days of any failure to pay. The plaintiff's position would have the balance of the guarantee agreement available no matter how much time has passed or how far in arrears the principal payor (Darce) may have become.

Although the plaintiff cites to several cases which it alleges support this position, only one is even close to being on point. In *United Clay Products Co. v. Linder*, 119 F.2d 456 (D.C.Cir.1941), an oral agreement required "prompt notice" to the guarantor of the debtor's default. The lender delayed in giving notice to the guarantor, but the trial court, finding no prejudice to the guar-

antor under the circumstances peculiar to that case, held that the guarantor was liable on the guarantee. The *Linder* case, of course, is different from the case at bar because the guarantee agreement before this Court does not involve an oral agreement of "prompt notice" of default, but specifies in writing that notice of default must be submitted to the guarantor within ninety days of a default.

In addition, the plaintiff's position is commercially unreasonable. No reasonable prudent businessman/banker would ever allow (much less contract to allow) a guarantee agreement to remain in force regardless of how much time had passed from a debtor's initial default or how far in arrears the debtor may have become. Without notice of the default and demand for payment under the guarantee agreement, the guarantor could take no steps to prevent deterioration of the collateral or deem the loan in default until the plaintiff/obligee, at some undetermined time, demanded payment of the guarantor under the agreement. "The obligation of prompt pursuit of payment by lenders ensures that lenders do not take advantage of the availability of loan insurance and leave to the government the collection efforts they normally would make." *American Bank of San Antonio v. United States*, 224 Ct.Cl. 482, 494, 633 F.2d 543, 549 (1980). Here, the contract requirement that the claim be submitted within 90 days of the initial default in payment ensures the Government that it will have "a reasonably fresh claim on which to pursue its right of subrogation." *American Bank of San Antonio v. United States, supra*, 224 Ct.Cl. at 494, 633 F.2d at 549. Plaintiff's Proposed Findings of Uncontroverted Fact admits that "Darce failed to pay the installment payment due on the note on April 24, 1984, and has failed to make any installment payments due subsequent to said date." However, it was not until almost a year later that the plaintiff/obligee made demand upon the Government to satisfy Darce's obligation as the guarantor of the note. Such economic behavior on the part of the plaintiff is exactly what the case law in this area prohibits, especially when there is a con-

tract clause regarding notice and demand directly on point.

Furthermore, the guarantee agreement does not discuss, envision, or give any indication that the guarantee would terminate only in part. The agreement is clear; if there is a default, the holder can demand payment on the entire guarantee obligation; conversely, if the holder does not make that demand, the entire guarantee obligation is terminated. The provisions of the guarantee agreement state quite clearly that "[t]he Guarantee * * * shall terminate in case * * * one or more of the following events shall occur * * * [w]hen the Payee shall have failed to demand payment of the Guarantee within sixty days after a Payment Default * * *." The paragraph does not say "shall terminate with respect to the payment" nor does it say "shall terminate in part." It says, "shall terminate," that is, the guarantee shall terminate in its entirety when the payee fails to demand payment of the guarantee within 90 days after a default in payment.

Such notice and demand for payment was not submitted within the contractual terms and the Government's guarantee obligation thus was terminated.

 Finally, if this Court were to indulge the plaintiff's argument that the guarantee agreement was ambiguous, the plaintiff would fare no better. As pointed out above, the agreement between the parties is composed of only four provisions, two of which are at issue. If the two provisions could not be harmonized, as the plaintiff suggests, the inconsistency between them would be so glaring for reasonably astute businessmen/bankers as to constitute a patent ambiguity on the face of the document. The doctrine of patent ambiguity is an exception to the *contra proferentem* rule which requires that the contractual language be construed against the drafting party. The existence of a patent ambiguity, *in itself,* raises the duty of inquiry, regardless of the reasonableness *vel non* of the plaintiff's interpretation; a determination by the court of plaintiff's contention that its interpretation of the contract is "reasonable" is therefore precluded

and unnecessary. *See Newsom v. United States, supra,* 230 Ct.Cl. at 303, 676 F.2d at 649; *George Hyman Construction Co. v. United States,* 215 Ct.Cl. 70, 80–81, 564 F.2d 939, 945 (1977); *Enrico Roman, Inc. v. United States, supra.*

If the lender/obligee believed the agreement to be ambiguous, it became obligated to determine the meaning of the language *before* entering into a binding contract. It is well established that in cases involving patent ambiguities in Government contracts, the plaintiff incurs an obligation to request clarification of the perceived contractual inconsistency and attempt to alleviate it before contracting. *Newsom v. United States, supra,* 230 Ct.Cl. at 303, 676 F.2d at 649; *B.D. Click, Inc. v. United States,* 222 Ct.Cl. 290, 614 F.2d 748 (1980). One who is aware of an ambiguity in contract language and fails to inquire assumes the distinct risk of choosing the wrong interpretation. *S.O.G. of Arkansas v. United States,* 212 Ct.Cl. 125, 546 F.2d 367 (1976).

In the case at hand, the guarantee contract says in the clearest of language that the guarantee terminates "[w]hen the Payee shall have failed to demand payment of the Guarantee within sixty days after *a* Payment Default * * *." (Emphasis supplied.)

The plaintiff suggests that the word "the" in the typewritten phrase "the obligee's right to demand payment under the guarantee expires 90 days from the due date for *the* payment which is in default" (emphasis supplied) should serve to nullify the termination clause of the agreement. While this Court "by no means wishes to condone sloppy drafting by the Government, it must recognize the value and importance of a duty of inquiry in achieving fair and expeditious administration of Government contracts." *See Newsom v. United States, supra,* 230 Ct.Cl. at 306, 676 F.2d at 651. The plaintiff, because of its failure to inquire into the meaning of the typewritten provision, simply is precluded from successfully urging its own interpretation of the contract at this stage.

In summary, this Court finds that the two clauses in question can be read harmoniously. The Government's guarantee obligations terminated under the contract when the plaintiff failed to demand payment on the guarantee within 60 days of Darce's initial payment default.

## CONCLUSION

For these reasons, discussed above, defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied and the complaint is to be dismissed.