**MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM**

v.

**The UNITED STATES.**

No. 130–86C.

United States Claims Court.

May 6, 1987.

Randy P. Zinna, Baton Rouge, La., for plaintiff.

Paul J. Ehlenbach, Washington, D.C., with whom were Asst. Attys. Gen. Richard K. Willard, David M. Cohen, and Thomas W. Petersen, for defendant. John L. Pe-

drick, Jr., and Sonya L. Gordon, Office of Gen. Counsel, Nat. Oceanic and Atmospheric Admin., of counsel.

## ORDER

### ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiff, Municipal Police Employees Retirement System, sues in this action for $666,544.73 (plus other relief), allegedly due under a government-guaranteed loan.

The case comes before the court at this time on the plaintiff's motion for summary judgment filed December 1, 1986, on the defendant's response to the plaintiff's motion and cross-motion for summary judgment, filed January 14, 1987, on the plaintiff's response to the cross-motion and reply, filed February 17, 1987, on the defendant's reply, filed March 26, 1987, and on oral arguments presented by counsel for the parties on April 22, 1987.

### The Facts

The parties have stipulated the material facts in the case; and they are outlined in this part of the order.

On June 18, 1980, Dennis L. and Jody Sturgell (the Sturgells) borrowed $608,125 from Morgan, Keegan & Company (Morgan) for the purchase of a newly constructed 66–foot commercial fishing vessel named the *Bold Contender*. The Sturgells executed a 20–year promissory note payable to Morgan for this loan. Under the terms of the note, the Sturgells were to make quarterly installment payments to Morgan in the amount of $19,566.40 each, beginning on September 18, 1980, and continuing thereafter on the 18th of each third month through the maturity of the obligation.

Pursuant to Subchapter XI of the Merchant Marine Act of 1936, as amended (46 U.S.C. § 1271 *et seq.* (1976)), the defendant, acting through the National Marine Fisheries Service (NMFS), Department of Commerce, issued a Guarantee Agreement to

Morgan on June 18, 1980, whereby the defendant guaranteed payment in full of the unpaid principal and accrued interest on the loan to the Sturgells, subject to certain conditions. The Guarantee Agreement extended to any lawful holder of the Sturgells' promissory note.

On July 2, 1980, Morgan assigned the guaranteed note to Bache Halsey Stuart Shields, Inc. (Bache), effective June 18, 1980. Also on July 2, 1980, Bache further assigned the guaranteed note to the plaintiff in this action, Municipal Police Employees Retirement System.

The plaintiff serves as a pension fund for various police departments in Louisiana. It has a membership of approximately 4,000 active members and 2,000 retirees. Currently, it has about $250 million in assets under its management. The plaintiff is actually located in Gonzalez, Louisiana, but the notice of the assignment of the Sturgells' guaranteed note to the plaintiff erroneously listed the plaintiff as being located in Gonzalez, California.

The Sturgells made the quarterly installment payments on their guaranteed note, through the payment that became due on June 18, 1982, although the payments generally were not received until 30 to 45 days after the respective due dates.

In July of 1982, the Sturgells' boat, the *Bold Contender*, sustained hull damage after hitting a rock. The Sturgells promptly notified NMFS of this accident after it occurred, and informed NMFS that they did not expect to be able to make the September 18, 1982, installment payment on the guaranteed note. NMFS suggested that the Sturgells get in touch with the plaintiff and request a payment deferral. The Sturgells did so, but the plaintiff denied this request. Nevertheless, the Sturgells were able to pay the note installment that became due on September 18, 1982. This payment was received in October 1982.

On January 3, 1983, the Sturgells notified NMFS that they had not paid the December 18, 1982, installment payment on their note, and that the plaintiff would not grant a deferral. They requested that NMFS make the payment; and they also

requested that NMFS advance additional funds to enable the Sturgells to purchase crabbing gear. On January 14, 1983, NMFS issued a check payable to the plaintiff covering the Sturgells' installment payment that became due on December 18, 1982, but NMFS erroneously mailed the check to Gonzalez, California. The plaintiff never received the check dated January 14, 1983.

On April 11, 1983, NMFS received from the Sturgells an application for a $138,350 loan under the Fisheries Loan Fund Program (*see* 16 U.S.C. § 742c(c) (1982)) to cover the delinquent December 18, 1982, installment payment on the guaranteed note, the already overdue March 18, 1983, installment payment, the prospective installment payments that would become due on June 18 and September 18 of 1983, and other miscellaneous expenses. The application included information concerning the Sturgells' then-current financial situation. NMFS eventually approved this application on July 7, 1983.

On April 21, 1983, NMFS issued to the plaintiff a check for the Sturgells' installment payment that became due on March 18, 1983. The plaintiff received this payment on April 27, 1983.

As of July 20, 1983, the installment payments on the guaranteed note that became due on December 18, 1982, and on June 18, 1983, had not been made by either the Sturgells or NMFS, although NMFS had attempted to pay the December 18, 1982, installment by misdirecting a check to Gonzalez, California. On July 20, 1983, the plaintiff issued a demand letter to the Sturgells, with a copy to NMFS, for the unpaid balance of the principal and accrued interest due on the guaranteed note.

On July 25, 1983, representatives of NMFS and of the plaintiff conferred, and NMFS discovered for the first time that the plaintiff had never received the government check covering the December 18, 1982, installment payment which had been sent erroneously to Gonzalez, California. At the conference on July 25, NMFS requested that the plaintiff withdraw its demand for payment, on the condition that

NMFS would issue a replacement check for the December 18, 1982, installment payment and another check for the June 18, 1983, installment payment, so that the Sturgell account would be brought into a current status by August 4, 1983. The plaintiff agreed to this proposal.

Consequently, NMFS issued to the plaintiff on July 25, 1983, a check for the June 18, 1983, installment payment, and then issued another check to the plaintiff on July 29, 1983, to replace the misdirected check covering the December 18, 1982, installment payment. In response, the plaintiff sent a letter to Dennis Sturgell on August 19, 1983, withdrawing its July 20, 1983, demand letter.

On September 15, 1983, NMFS issued to the plaintiff a check covering the Sturgells' installment payment that was to become due on September 18, 1983.

Thereafter, the Sturgells made their December 18, 1983, March 18, 1984, and June 18, 1984, payments on the guaranteed note, but the plaintiff did not receive the payment for June 18, 1984, until August 1984. All installment payments on the guaranteed note, through the one that became due on June 18, 1984, were paid by the Sturgells or by NMFS. The June 18, 1984, installment, however, was the last payment that the plaintiff ever received from either the Sturgells or NMFS (although the Sturgells incorrectly informed NMFS on October 16, 1984, that the installment payment which became due on September 18, 1984, had been paid).

On February 25, 1985, Dennis Sturgell informed NMFS that he did not make the installment payment that became due on December 18, 1984, and that he would be unable to make the payment that would become due on March 18, 1985. This was the first information received by NMFS to the effect that the Sturgells had again defaulted on their guaranteed note.

By means of a letter dated April 4, 1985, the plaintiff made demand on the Sturgells for the unpaid principal balance and accrued interest due on the guaranteed note. In a letter dated April 8, 1985, the plaintiff also made a written demand on NMFS for

the unpaid principal and accrued interest. This demand was received by NMFS on April 11, 1985.

In a letter dated August 5, 1985, NMFS informed the plaintiff that it had determined that the Government's guarantee of the Sturgells' note had terminated because the plaintiff failed to demand payment within the prescribed period after a payment default.

On February 27, 1986, the plaintiff filed its complaint in this court. The amount sued for, $666,544.73, represents the portion of the principal of the Sturgells' guaranteed note which allegedly was still unpaid after the plaintiff received the installment payment for June 18, 1984, and the unpaid accrued interest.

## Discussion
### The Demand of July 20, 1983

At the time when the Sturgells' note was guaranteed by the Government, 46 U.S.C. § 1275(a) (1976) provided in part as follows with respect to the making of a demand for payment by the holder of a note guaranteed by the Government under Subchapter XI of the Merchant Marine Act:

> In the event of a default, which has continued for thirty days, in any payment by the obligor of principal or interest due under an obligation guaranteed under this subchapter, the obligee or his agent shall have the right to demand, at or before the expiration of such period as may be specified in the guarantee or related agreements, but not later than ninety days from the date of such default, payments by the Secretary of Commerce of the unpaid principal amount of said obligation and of the unpaid interest thereon to the date of payment.

The demand provisions of the Guarantee Agreement involved in this case are consistent with the statutory provision just quoted and provide in part as follows:

> In the event of default which has continued for thirty days, in any payment by the Payor of any principal or interest due under that certain Guaranteed Note (a "Payment Default") the Obligee shall have the right to demand in writing, no later than sixty days from the date of a Payment Default, payment by the Secretary of the Guarantee. The Secretary must make payment in cash of the Guarantee within thirty days of receipt of a proper demand * * *. The Obligee's right to demand payment under the Guarantee expires ninety (90) days from the due date for the payment which is in default.

> \*   \*   \*   \*   \*   \*

> The Guarantee with respect to the Guaranteed Note shall terminate in case, and only in case, one or more of the following events shall occur:

> \*   \*   \*   \*   \*   \*

> (4) When the payee shall have failed to demand payment of the Guarantee within sixty days after a Payment Default.
> * * *

During the history of this case, as outlined in the facts, the plaintiff on two occasions demanded payment of the unpaid balance of the principal and accrued interest due on the Sturgells' note which had been guaranteed by NMFS. The first of these demands was dated July 20, 1983, and it was in the form of a letter addressed to the Sturgells, with a copy to NMFS. At that time, two installment payments on the guaranteed note were overdue and unpaid—*i.e.*, the installment which became due on December 18, 1982, and the installment which became due on June 18, 1983.

The plaintiff argues in its brief that the Secretary of Commerce (or his delegate, NMFS) was contractually obligated under the Guarantee Agreement to pay to the plaintiff the unpaid principal and interest on the guaranteed note within 30 days after the receipt by NMFS of a copy of the demand letter which the plaintiff addressed to the Sturgells on July 20, 1983. Consequently, according to the plaintiff, the NMFS breached the Guarantee Agreement by failing, within such 30 day period, to pay the plaintiff the full amount of the unpaid principal and the unpaid interest on the guaranteed note.

The court does not find the plaintiff's argument on this point to be persuasive.

Precedents counsel the necessity of strict compliance, by the obligee of a government-guaranteed note, with the demand requirements of the governing guarantee agreement. *Cf. American Bank of San Antonio v. United States*, 224 Ct.Cl. 482, 493–95, 633 F.2d 543, 549–50 (1980); *American Savings v. Bell*, 562 F.Supp. 4, 11–12 (D.D.C.1981).

█ In the present case, it has been noted that the governing statutory provision and the Guarantee Agreement granted the obligee of the guaranteed note the right to demand payment *by the Secretary of Commerce* (or his delegate, NMFS) within 90 days after the due date of an unpaid installment; and the Guarantee Agreement declared that the Secretary must make payment within 30 days after the receipt *of a proper demand.* The plaintiff's demand letter of July 20, 1983, was not addressed to, and did not demand payment by, the Secretary of Commerce (or his delegate, NMFS). Rather, the demand letter was addressed to, and demanded payment by, the Sturgells. In view of the necessity of strict compliance by the plaintiff with the demand requirements of the Guarantee Agreement, the demand which the plaintiff made on the Sturgells in the letter of July 20, 1983, was insufficient to impose a contractual obligation on NMFS to pay the full amount of the unpaid principal and the unpaid interest on the guaranteed note.

That the plaintiff was well aware that a demand for payment made on the Sturgells was not the same as a demand for payment made on NMFS is shown: (1) by the fact that, when the plaintiff withdrew its demand of July 20, 1983, the letter of withdrawal was addressed to Dennis Sturgell, and not to NMFS; and (2) by the fact that, in 1985 (as discussed later), the plaintiff made separate demands for payment on the Sturgells and on NMFS.

█ Furthermore, even if the written demand of July 20, 1983, had been made on NMFS, rather than on the Sturgells, the demand would still have been ineffective.

As previously stated, the December 18, 1982, installment payment on the guaranteed note was still unpaid and overdue when the demand letter was written by the plaintiff on July 20, 1983. Consequently, the demand letter was written approximately 7 months after the December 18, 1982, installment became due.

The Guarantee Agreement declared in plain language that the guarantee shall terminate "[w]hen the payee shall have failed to demand payment of the Guarantee within sixty days after a Payment Default." The "Payment Default" with respect to the December 18, 1982, installment payment on the Sturgells' note occurred 30 days after that date, or on January 17, 1983. The plaintiff had a maximum period of 60 days after January 17, 1983, or until March 18, 1983, within which to demand payment of the guaranteed note in full, plus accrued interest.[1] Upon the expiration of the 60–day period without any demand for payment having been made by the plaintiff, NMFS was entitled to declare that its guarantee of the Sturgells' note had terminated. *Cf. American Bankers Life Assurance Company of Florida v. United States*, 12 Cl.Ct. 166, 172–173 (decided Apr. 10, 1987). NMFS, however, did not take advantage of its opportunity in this respect.

█ Actually, NMFS was unaware until July 25, 1983, that the December 18, 1982, installment payment on the guaranteed note was still unpaid. The actions of NMFS on and after July 25, 1983, in issuing to the plaintiff checks in payment of the December 18, 1982, the June 18, 1983, and the September 18, 1983, unpaid installments may be regarded as a waiver by NMFS of its right to declare the guarantee on the Sturgells' note as having been terminated by the plaintiff's failure to demand payment of the December 18, 1982, installment within 60 days after the date of the "Payment Default" (or within 90 days after the payment due date of December 18, 1982). *See J. Calamari & J. Perillo, The*

---

**1.** It may be noted in this connection that the payment for the March 18, 1983, installment was not received by the plaintiff until April 27, 1983. As of March 18, 1983, therefore, both the December 18, 1982, and the March 18, 1983, installments were unpaid.

*Law of Contracts,* 449–50 (2nd ed. 1977); *cf. DeVito v. United States,* 188 Ct.Cl. 979, 990–92, 413 F.2d 1147, 1154 (1969); *Boston Shipyard Corp. v. United States,* 10 Cl.Ct. 151, 159–60 (1986) (explaining *DeVito* ).

### The Demands of April 4 and 8, 1985

It should be noted that none of the installment payments mentioned in the preceding part of the discussion is directly involved in the present litigation. In fact, all installments on the Sturgells' guaranteed note, through the installment payment which became due on June 18, 1984, were paid to the plaintiff either by the Sturgells or by NMFS (although many payments were made after the respective due dates).

■ The present action, therefore, directly involves only those installment payments that became due on and after September 18, 1984, plus accrued interest. None of these installments was paid either by the Sturgells or by NMFS.

In separate letters dated April 4 and 8 of 1985, the plaintiff made written demands on the Sturgells and on NMFS, respectively, for the unpaid principal and accrued interest due on the Sturgells' guaranteed note. The demand on NMFS was denied in a letter dated August 5, 1985, on the ground that the Government's guarantee of the Sturgells' note had terminated because the plaintiff failed to demand payment within the period prescribed in the Guarantee Agreement.

The "Payment Default" with respect to the installment payment that became due on September 18, 1984, occurred 30 days after the due date of the installment, or on October 18, 1984. The plaintiff had a maximum period of 60 days after the latter date, or until December 17, 1984, within which to demand payment of the unpaid principal and accrued interest due on the guaranteed note. When the prescribed period expired without action by the plaintiff,

then, under the plain language of the Guarantee Agreement involved in this case, the Government's guarantee of the Sturgells' note was terminated. This time, NMFS did not waive its right of termination under the Guarantee Agreement, as it had done in connection with the plaintiff's failure to make a proper and timely demand with respect to the December 18, 1982, installment. Instead, NMFS informed the plaintiff that the Government's guarantee of the Sturgells' note had terminated because of the plaintiff's failure to make a timely demand for payment.

As explained in the first part of the discussion, this action by NMFS was clearly authorized by the specific provisions of the Guarantee Agreement involved in this case. *Cf. American Bankers Life Assurance Company of Florida,* at 172–73.

■ It necessarily follows that the plaintiff is not entitled to recover in the present action.[2]

### Conclusion

For the reasons previously stated in this order, the papers before the court show that there is no genuine issue as to any material fact necessary for the disposition of the case, and that the defendant is entitled to a judgment as a matter of law.

Accordingly, the defendant's cross-motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied.

The clerk will dismiss the complaint.

Each party shall bear its own costs.

IT IS SO ORDERED.

---

**2.** The plaintiff argues that the defendant should be equitably estopped from asserting the termination of the Guarantee Agreement because the Government never disclosed to the plaintiff what the Government knew about the Sturgells' troubled financial condition. This argument, however, must fail because the plaintiff was not

injured by relying on the United States' conduct, but by the plaintiff's failure to make a timely demand for payment in full on the Government. *See First National Bank of Louisa, Kentucky v. United States,* 6 Cl.Ct. 241, 244 (1984); *Pacific Gas & Electric Co. v. United States,* 3 Cl.Ct. 329, 340 (1983).