**M.T.R.C., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 775–86C.**

United States Claims Court.

Aug. 31, 1987.

Terry T. Wiens, Oklahoma City, Okl., for plaintiff.

Eric L. Miller, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

# 246

## ORDER

MOODY R. TIDWELL, III, Judge:

This action comes before the court on cross-motions for summary judgment. Plaintiff alleges breach of contract and requests defendant to relinquish to plaintiff the value of property in which defendant had held a security interest.

## FACTS

The original transaction upon which this claim is based was between the United States acting through the Small Business Administration and Mr. Bill Southern, d/b/a Bill Southern Chevrolet. In November 1980, Southern executed a promissory note and a security agreement for a loan of $125,000 from defendant. A contemporary financing statement shows that the defendant received a secured interest in Southern's then-owned and after-acquired property, all accounts receivable then due or accruing to Southern, and all contract rights of Southern then in force or thereafter acquired. In June of 1984, Southern informed SBA of his desire to sell his business and property. Ten days later Southern filed a petition for bankruptcy. *In re Southern*, No. 84–01838–B7 (Bankr.W.D. Okla. filed June 28, 1984).

Southern then informed the Chevrolet division of General Motors Corporation that he was terminating his Dealer Sales and Service Agreement. Shortly after September 10, 1984, the date on which the agreement with GM terminated, GM took possession of returnable parts and special tools which were on the premises of Southern Chevrolet to debit an outstanding balance owed by Southern to GM. On October 8, 1984, GM informed defendant of its action but declared that it could not process Southern's "terminated parts return" because of defendant's secured interest in the property. GM requested that defendant execute an indemnification agreement. Defendant replied on October 11, 1984 that it could not, by law, execute the indemnification agreement but in lieu thereof offered to sell GM a "partial release [of its secured interest] on parts, accessories, signs, and equipment purchased by General Motors

Corporation." Defendant's letter concluded with the request that "[t]he check should be made payable to the Small Business Administration."

Meanwhile, plaintiff, MTRC, had positioned itself to buy out Southern's assets. The trustee in bankruptcy abandoned the property, thus allowing a sale to go ahead, and on October 31, 1984, the Bankruptcy Court for the Western District of Oklahoma granted defendant permission to exercise rights to the property described in its security agreement with Southern. A week later, on November 8, 1984, plaintiff indicated in a letter to defendant that it wished to purchase "everything that SBA has a filing on." Plaintiff went on to explain in that letter that its desired buy out included "all machinery and equipment, furniture, fixtures, inventory, accounts receivables, Body Shop building and lots, Chevrolet building, contents of both buildings, all receivables due from GM for parts return and special tools." The buy out required, in essence, the purchase of defendant's interest in Southern's assets. Plaintiff enclosed a check in the amount of $57,000 to be held by defendant until defendant freed everything for liquidation of contents and plaintiff received releases on deeds. Defendant accepted the offer as made.

Defendant thereafter released or terminated all security interests held as liens against the property and negotiated the $57,000 check. Upon plaintiff's subsequent attempt to marshall all of Southern's assets, plaintiff was unable to obtain the accounts receivables on the parts and tools previously returned to GM valued at $31,-166.77.

Plaintiff brought suit against the SBA in the United States District Court for the Western District of Oklahoma. That court dismissed the suit for lack of jurisdiction finding that exclusive jurisdiction was in the United States Claims Court. *M.T.R.C., Inc. v. Small Business Admin.*, No. CIV–86–1222–W (W.D.Okla. Sept. 15, 1986) (order granting defendant's motion to dismiss).

Plaintiff alleged that defendant was due the $57,000.00 only upon plaintiff's receipt of title to all of Southern's assets mentioned in the November 8 contract, and that defendant negotiated the check in breach of the contract. Defendant maintained that its only obligation to plaintiff under the contract was to release all liens held at the time and that by its having done so, its obligations were performed and its rights to the $57,000.00 had fully matured.

## DISCUSSION

Plaintiff asserted breach of contract for defendant's failure to deliver or ensure the delivery of the title to or value of all the property listed in the November 8 contract. Defendant denied plaintiff's allegations and maintained that its obligation entailed only the release of all secured interests on Southern's property held by defendant on the date of the contract.

The cause of the dispute becomes clear. On October 11, 1984, defendant terminated its secured interest on the retaken returnable parts and special tools in favor of GM. Then, on or about November 8, 1984, four weeks later, defendant agreed with plaintiff to terminate its secured interest on everything with respect to Southern's assets, including "all receivables due from GM for parts return and special tools." The issues presented to the court is what exactly did defendant agree to free or release in its November 8, 1984, contract with plaintiff.

It would appear from the first reading of the language of plaintiff's offer that defendant agreed to terminate its secured interest in all of Southern's property, including receivables due from GM for parts and tools, in favor of plaintiff, but that defendant had terminated its secured interest over the parts and tools in favor of GM a month before it agreed to terminate its same secured interest over the GM parts and tools in favor of plaintiff. Following that theory to its logical end would result in a conclusion that either a contract never arose from the November 8, 1984, agreement with plaintiff or that defendant had indeed breached its contract with plaintiff

by contracting to perform an act that it did not and, indeed could not do, *i.e.*, terminate its secured interest in favor of plaintiff so as entitle plaintiff additional rights respecting the receivables from GM when defendant had already acted in favor of GM. But, this court comes to neither conclusion because a closer look at the November 8, 1984, contract between the parties reveals that the contract was valid, as uncontested by the parties, and that defendant did not breach the contract.

Plaintiff would have the court read defendant's release obligation broadly to cover everything included in the original 1980 security agreement, *i.e.*, to include the contested accounts receivable. Plaintiff would have this court focus primarily on the fact that the contract can be interpreted as assuming that the security interest at the time of the contract included, or asserted the inclusion of, the accounts receivable in question. The court, however, reads the contract as a whole, construing its provisions so as to lend consistency and clarity to all the operative provisions and terms. *A & K Plumbing & Mechanical, Inc. v. United States*, 1 Cl.Ct. 716, 721 (1983).

This court refers consistently to the contract as the contract of November 8, 1984, because that is the only date of significance set forth by plaintiff, the drafter of the letter contract. It is the date of the offer. Although, the date of acceptance by defendant is not known, it is not relevant to our inquiry. In its offer plaintiff expressed the desire to "purchase everything that SBA has a filing on." Plaintiff requested defendant to hold the $57,000.00 cashier's check "until everything is freed for liquidation of contents." Plaintiff chose to use these words and phrases as operative terms of the contract. In order to construe them to be consistent the court merely applies their plain meaning. Plaintiff wanted to purchase property in which defendant had a filed security interest on November 8, 1984. The contract makes no mention of any previous filing. It is presumed plaintiff knew what property interests it was desirous of purchasing. Especially where filings such as the one in this

case are a matter of public record. It was therefore incumbent upon plaintiff, not defendant, to ascertain what was covered by defendant's filing as of November 8, 1984.[1]

Likewise, with respect to the property which was to be freed for liquidation, the language of the contract does not refer to any property previously owned by Southern but merely to property as of November 8, 1984. Any property or contents of buildings referred to would therefore be that on hand, not property previously taken by GM. GM had taken possession of some contents possibly as early as September. Mr. Southern knew of this and because he was employed by MTRC to assist in the buy out, the court can easily impute his knowledge to MTRC.

Therefore, as of November 8, 1984, when defendant agreed with plaintiff to terminate its secured interest, it did so on the basis that the parts and special tools were no longer covered by its secured interest. Indeed, Southern no longer held the property, defendant held no security interest in the property and plaintiff knew or should have known of that fact when it entered into the agreement. The contract merely required defendant to terminate its secured interest on the contents and deeds as of November 8, 1984; the receivables from GM for parts and special tools were not covered by defendant's filing.

Moreover, plaintiff chose the language of the contract and is bound by them. The most common method of interpreting a contract containing ambiguous language is to construe such language against the drafter. *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669, 105 S.Ct. 1544, 1552, 84 L.Ed.2d 590 (1985); *United States v. Seckinger*, 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970); *American Bankers Life Assurance Co. v. United States*, 12 Cl.Ct. 166, 173 (1987). In this case the court concludes that because of the public filing plaintiff was constructively aware of the ambiguity in terms. Plaintiff, therefore, cannot prevail in this construction

contest because "[o]ne who is aware of an ambiguity in contract language and fails to inquire assumes the distinct risk of choosing the wrong interpretation." *American Bankers*, 12 Cl.Ct. at 173. If there is an ambiguity in plaintiff's letter contract with defendant which states its intent to purchase "everything that SBA has a filing on" and its specific inclusion of "all receivables due from GM for parts return and special tools," to which defendant then had no interest by virtue of its earlier release in favor of GM, the ambiguity must be interpreted in favor of defendant. Plaintiff received what it bargained for; everything defendant had a secured interest on as of November 8, 1984.

By either method we arrive at the same result.

### CONCLUSION

Defendant is not liable to plaintiff for plaintiff's inability to capture the value of the parts and special tooling receivables allegedly due from GM. Accordingly, defendant's motion for summary judgment is granted and plaintiff's is denied. The Clerk is directed to dismiss the complaint. No costs.

IT IS SO ORDERED.

---

1. Plaintiff is estopped from arguing that defendant deceptively took advantage of plaintiff's ignorance vis-a-vis the breadth of defendant's filing. Plaintiff had sufficient inquiry notice that GM had asserted rights in the returnable parts and tools.