**George E. NEWSOM**

v.

**The UNITED STATES.**

**Appeal No. 11–80.**

United States Court of Claims.

April 7, 1982.

David H. Goldman, Des Moines, Iowa, attorney of record, for petitioner; Rogers, Phillips & Swanger, Des Moines, Iowa, of counsel.

Nancy R. Sills, with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D. C., for respondent.

Before KASHIWA, KUNZIG * and SMITH, Judges.

---

* Judge Robert L. Kunzig died February 21, 1982. He participated in the oral argument and agreed to the determination in this case before his death.

ON APPEAL

SMITH, Judge:

This case is an appeal by petitioner, George E. Newsom, of a decision of the Veterans Administration Board of Contract Appeals (board).[1] The board found that certain parts of the contract for hospital improvements were patently ambiguous and that, having failed to consult with the contracting officer about the ambiguities, petitioner was barred from recovering for work done beyond that required under petitioner's interpretation of the contract. We affirm the decision of the board.

On August 28, 1978, the Veterans Administration (VA) issued an invitation for bids for building medi-prep and janitor rooms in the VA hospital at Knoxville, Iowa. Drawings and specifications for the work to be done were supplied to the prospective bidders.

Paragraphs 4, 5, and 6 of the specifications described, respectively, buildings 81, 82, and 85. Each paragraph had two parts: the first described the first floor of the building and referenced page 7 of the drawings; the second described the second floor of the building and referenced page 8 of the drawings. Conversely, the caption block on page 7 of the drawings indicated that it described work for all three buildings, 81, 82, and 85. However, page 8 of the drawings indicated only building 85.[2] Petitioner at no time inquired about this discrepancy.

As a consequence, petitioner included in his bid the costs of the second floor of building 85 only. He was the low bidder and the contract was awarded to him on October 13, 1978. It was not until March 29, 1979, that the parties realized that there was a discrepancy between what the VA had intended and what petitioner had understood. Petitioner then did the work as intended by the VA at an additional cost of $14,600, and he appealed the decision of the contracting officer denying relief to the Veterans Administration Board of Contract Appeals. The board held against petitioner on the ground that the error on page 8 of the drawings was a patent ambiguity which imposed upon the contractor a duty to inquire about it. Petitioner now appeals that finding to this court under the Contract Disputes Act.

The doctrine of patent ambiguity is an exception to the general rule of *contra proferentem* which requires that a contract be construed against the party who wrote it. If a patent ambiguity is found in a contract, the contractor has a duty to inquire of the contracting officer the true meaning of the contract before submitting a bid.[3] This prevents contractors from taking advantage of the Government; it protects other bidders by ensuring that all bidders bid on the same specifications; and it materially aids the administration of Government contracts by requiring that ambiguities be raised before the contract is bid on, thus avoiding costly litigation after the fact.[4] It is therefore important that we give effect to the patent ambiguity doctrine in appropriate situations.

The existence of a patent ambiguity is a question of contractual interpretation which must be decided de novo by the court.[5] This determination cannot be made

1. *George E. Newsom, Contractor*, 80–2BCA ¶ 14,490, VABCA No. 1500.

2. It is not entirely clear whether a drawing of building 85 on page 8 of the drawings would have also described buildings 81 and 82, or whether separate drawings of buildings 81 and 82 were omitted from page 8. We do not believe that there is a difference of legal significance between these two possibilities.

3. *Beacon Constr. Co. v. United States*, 161 Ct.Cl. 1, 6, 314 F.2d 501, 504 (1963); *Blount Bros. Constr. Co. v. United States*, 171 Ct.Cl. 478, 495–96, 346 F.2d 962, 971–72 (1965).

4. *See Beacon Constr. Co. v. United States, supra* note 3, 161 Ct.Cl. at 6–7, 314 F.2d at 504; *S.O.G. of Arkansas v. United States*, 212 Ct.Cl. 125, 131, 546 F.2d 367, 370–71 (1976).

5. *HRH Constr. Corp. v. United States*, 192 Ct.Cl. 912, 918, 428 F.2d 1267, 1271 (1970); *Blount Bros. Constr. Co. v. United States, supra* note 3, 171 Ct.Cl. at 481–82, 346 F.2d at 964; 41 U.S.C. § 609(b) (Supp. III 1979).

upon the basis of a single general rule, however. Rather, it is a case-by-case judgment based upon an objective standard.[6] In coming to our decision, we are bound neither by the legal conclusions of the board, nor by the subjective beliefs of the contractor, subcontractors, or resident engineer as to the obviousness of the ambiguity.

The analytical framework for cases like the instant one was set out authoritatively in *Mountain Home Contractors v. United States.*[7] It mandated a two-step analysis. First, the court must ask whether the ambiguity was patent. This is not a simple yes-no proposition but involves placing the contractual language at a point along a spectrum: Is it *so* glaring as to raise a duty to inquire?[8] Only if the court decides that the ambiguity was not patent does it reach the question whether a plaintiff's interpretation was reasonable.[9] The existence of a patent ambiguity *in itself* raises the duty of inquiry, regardless of the reasonableness *vel non* of the contractor's interpretation.[10] It is crucial to bear in mind this analytical framework. The court may not consider the reasonableness of the contractor's interpretation, if at all, until it has determined that a patent ambiguity did not exist.[11]

Examining the contract itself, we find that a patent ambiguity existed. Two parts of the contract said very different things: the specifications required construction on the second floors of buildings 81, 82, and 85, whereas the drawings required construction on the second floor of only building 85. It is impossible from the words of the contract to determine what was really meant. The contractor speculated that it meant that part of the project had been dropped along the way. Looking at the same language, the Government can insist that it was clearly a drafting error. We do not consider which interpretation is correct;[12] at this stage we determine only whether there was an ambiguity. What is significant about the differing interpretations is that neither does away with the contract's ambiguity or internal contradiction.[13] There is simply no way to decide what to do on the second floors of buildings 81 and 82 without recognizing that the contract also indicates otherwise.

*Mountain Home*, discussed above, involved a very similar ambiguity.[14] The specifications ordered inclusion of kitchen fans in certain housing units, but the drawings appeared to indicate that kitchen fans were not to be installed. There is a crucial difference between that case and this, however. In *Mountain Home* the indication on the drawing was that the fans were to be under an alternate bid. Thus, the drawings indicated that the Government was reserving the option of either including the fans in the main contract or ordering them separately. The drawings did not state that the fans were simply not to be included. The *Mountain Home* contract, therefore, was susceptible of an interpretation which did not leave significant ambiguities or internal contradictions. Here, even petitioner's in-

---

6.  *HRH Constr. Corp. v. United States, supra* note 5, 192 Ct.Cl. at 919, 428 F.2d at 1271; *L. Rosenman Corp. v. United States*, 182 Ct.Cl. 586, 590, 390 F.2d 711, 713 (1968).

7.  *Mountain Home Contractors v. United States*, 192 Ct.Cl. 16, 20–21, 425 F.2d 1260, 1263 (1970).

8.  *Id.*, 192 Ct.Cl. at 22, 425 F.2d at 1264.

9.  *Id.*, 192 Ct.Cl. at 21, 425 F.2d at 1263.

10.  *See, e.g., Highway Products, Inc. v. United States*, 208 Ct.Cl. 926, 942, 530 F.2d 911, 920 (1976); *Space Corp. v. United States*, 200 Ct.Cl. 1, 6, 470 F.2d 536, 539 (1972); *HRH Constr. Corp. v. United States, supra* note 5, 192 Ct.Cl. at 919, 428 F.2d at 1271; *Beacon Constr. Co. v.*

*United States, supra* note 3, 161 Ct.Cl. at 6–7, 314 F.2d at 504.

11.  If the court finds that a patent ambiguity did not exist, then the reasonableness of the contractor's interpretation becomes crucial in deciding whether the normal *contra proferentem* rule applies.

12.  *Beacon Constr. Co. v. United States, supra* note 3, 161 Ct.Cl. at 5 n.2, 314 F.2d at 503 n.2.

13.  *HRH Constr. Corp. v. United States, supra* note 5, 192 Ct.Cl. at 918, 428 F.2d at 1271.

14.  *Mountain Home Contractors v. United States, supra* note 7, 192 Ct.Cl. at 19, 425 F.2d at 1262.

terpretation acknowledges that the contract is not internally consistent. Petitioner's interpretation explains the reason for the inconsistency but does not eliminate it.[15]

We recognize that the instant case does not represent a difference in kind from the *Mountain Home* facts, but this area of the law involves a case-by-case determination of placement along a spectrum. In our opinion, this case is closer to *Beacon Construction*[16] than to *Mountain Home.* In *Beacon Construction*, the specifications stated only that "weatherstrip shall be provided for all doors," while the drawings describing the weatherstripping clearly indicated weatherstripping around the windows as well.[17] The conflict between the specifications and the drawings was direct, as in the instant case. And the court was not swayed by the mere fact that the contractor was able to come up with a highly plausible interpretation of the ambiguity. No interpretation could in *Beacon Construction*, or can in the instant case, eliminate the substantial, obvious conflict between the drawings and the specifications.[18]

Finally, we emphasize the negligible time and the ease of effort required to make inquiry of the contracting officer compared with the costs of erroneous interpretation, including protracted litigation. While the court by no means wishes to condone sloppy drafting by the Government, it must recognize the value and importance of a duty of inquiry in achieving fair and expeditious administration of Government contracts.

Accordingly, upon consideration of the submissions, and after hearing oral argument, the decision of the Veterans Administration Board of Contract Appeals is

AFFIRMED.

---

**15.** *See HRH Constr. Corp. v. United States, supra* note 5, 192 Ct.Cl. at 918, 428 F.2d at 1271.

**16.** *Beacon Constr. Co. v. United States, supra* note 3, 161 Ct.Cl. at 4–5, 314 F.2d at 502–03.

**17.** *Id.*

**18.** *See HRH Constr. Corp. v. United States, supra* note 5, 192 Ct.Cl. at 918, 428 F.2d at 1271.