949 F.2d 403
 37 Cont.Cas.Fed. (CCH) P 76,189
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
HALIFAX ENGINEERING, INC., Appellant,
v.
The UNITED STATES, Appellee.
 No. 91-1121.
 United States Court of Appeals, Federal Circuit.
 Oct. 8, 1991.
Rehearing Denied Dec. 11, 1991.
 
 Before ARCHER, MICHEL and RADER, Circuit Judges.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Halifax Engineering, Inc. ("Halifax") appeals the decision of the Armed Services Board of Contract Appeals ("Board") that the government was entitled to a refund of $432,890 for overpayment made on an engineering services contract. Appeal of Halifax Engineering, Inc., ASBCA No. 37335 (Oct. 23, 1990). The Board determined that the contract was a "fixed price level of effort" contract and its terms were unambiguous. Although the Board incorrectly determined that the contract's terms were unambiguous, on the basis of the Board's alternative reasoning that before bidding on the contract, Halifax had a duty to attempt to clarify "patent" ambiguities, but failed to do so, we affirm.
 
 DISCUSSION
 
 2
 The meaning of contract language is a legal question, and therefore our review is de novo, and the Board's conclusions are neither final nor binding on this court. 41 U.S.C. § 609(b) (1988); SMS Data Group v. United States, 900 F.2d 1553, 1555 (Fed.Cir.1990).
 
 
 3
 On appeal, the threshold issue is whether the Board correctly determined that the contract-in-issue is "clearly" and unambiguously a "fixed price level of effort contract." If so, our analysis ends. However, if the contract's terms are ambiguous, we must determine whether the ambiguity is "patent," thus requiring Halifax to have made a "reasonable inquiry" before bidding on the contract. United States v. Turner Constr. Co., 819 F.2d 283, 285-86 (Fed.Cir.1987); Newson v. United States, 676 F.2d 647, 650 (Ct.Cl.1982). Only if the ambiguity is not patent, but rather latent, may we look to the reasonableness of the contractor's construction. Id. at 650; H & M Moving, Inc. v. United States, 499 F.2d 660, 671 (Ct.Cl.1974).
 
 
 4
 * Halifax argues that as properly interpreted the "contract as written and awarded" is a "firm fixed price" contract, rather than, as the government argues and the Board concluded, a "fixed price level of effort" contract. At the very least, Halifax urges, its interpretation was reasonable. Acknowledging that the phrase "fixed price level of effort" appears three times within the text of the contract, Halifax nevertheless contends that what controls here is not the language it contains, but what is missing. Relying on testimony of its expert witness, Halifax asserts that the contract in dispute could not possibly be regarded as a "fixed price level of effort" contract, since "[i]t lacks virtually all the key provisions normally contained in such a contract." Appellant's Br. at 15. In response, the government stresses that the phrase "fixed price level of effort basis " of compliance and payment appears three times in the contract, including Contract Line Item Number 0001, and concludes that the "terms could be no clearer." Gov't.Br. at 10 (emphasis added).
 
 
 5
 Despite the Board's determination that "the contract is clear and that [it] was a fixed-price level of effort contract," Halifax, slip op. at 10., we conclude the contract is ambiguous. Halifax contends that while the contract uses the phrase "fixed price level of effort," many of the "key provisions" typically found in a "fixed price level of effort" contract are absent here. While their undisputed absence does not compel construing the contract as a "firm fixed price" contract, as Halifax contends, it does establish the document's ambiguity.
 
 
 6
 Since this ambiguity both arises from language in the contract and goes to the very basis of contract remuneration, it is clearly "patent." See, e.g., S.O.G. of Arkansas v. United States, 546 F.2d 367, 370 (Ct.Cl.1976) (a patent ambiguity exists where a contractor "should have recognized at once that there would be a grave problem" created by the internal inconsistency within the contract). Both this court and its predecessor have consistently held that if a government contract on its face contains a "patent" or "glaring" ambiguity or omission, the contractor as the non-drafting party has a duty to make a reasonable inquiry before bidding. E.g., Fort Vancouver Plywood Co. v. United States, 860 F.2d 409, 414 (Fed.Cir.1988); Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed.Cir.1985); George Hyman Constr. Co. v. United States, 564 F.2d 939, 945 (Ct.Cl.1977).
 
 
 7
 Charles A. Webb, Jr., then Halifax's president, testified that, at the time of bidding, he perceived a conflict between the "fixed price level of effort" provisions and the remainder of the contract. Halifax, slip op. at 10. Even after recognizing the facial ambiguity, Webb still made no inquiry to the government representative as to the contract's true nature, as he admitted. Id.
 
 II
 
 8
 In an attempt to excuse Webb's inaction, Halifax now argues that he was not obligated to make any such inquiries, because "[i]f Webb had sought a clarification prior to submitting a bid, he would have discovered the Government shared his interpretation of the compensation scheme." Appellant's Br. at 17. Inquiries are unnecessary, Halifax contends, if such questioning would not "yield a response that will clarify the Government's intent." Id. (quoting Wright Associates, Inc., ASBCA No. 22492, 79-2 BCA p 14,102 at 69,379 (1979)). In light of the government's conduct during the execution of the contract, Halifax speculates that had it inquired, the government representative would have responded that he too thought the contract was a "firm fixed price" contract. This is far from clear on the record, and certainly the Board did not so find. However, determining whether such conjecture was proven on this record ultimately requires a factual finding which falls outside the province of an appeals court. Hayes v. Department of Navy, 727 F.2d 1535, 1537 (Fed.Cir.1984) ("No appellate court has the institutional competence or authority to find facts....").
 
 
 9
 The burden of proving an excuse from an obligation to inquire, if indeed there can ever be one, rested on the contractor. Having not carried its burden on excuse, we must conclude that Halifax was not excused from its obligation to make a reasonable inquiry concerning a "patent" ambiguity. See Newsom, 676 F.2d at 650 ("The existence of a patent ambiguity in itself raises the duty of inquiry, regardless of the reasonableness vel non of the contractor's interpretation.") (emphasis in original) (footnote omitted). As the Board correctly held, by such conscious inaction, Halifax "assumed the risk that its interpretation would turn out to be incorrect." Halifax, slip op. at 10. The underlying policy reason for this rule was as stated by the Court of Claims: "While the court by no means wishes to condone sloppy drafting by the Government, it must recognize the value and importance of a duty of inquiry in achieving fair and expeditious administration of Government contracts." Newsom, 676 F.2d at 651. To excuse Halifax's inaction would seriously undermine this policy and diminish certainty and clarity in governmental contract law. This we decline to do.
 
 CONCLUSION
 
 10
 The Board erred in determining that the contract between Halifax and the government was unambiguous. The inclusion of the phrase "fixed price level of effort" and the absence of any other provisions normally included in that type of contract created a "patent" ambiguity about which Halifax had a duty to inquire. Therefore, in light of Halifax's inexcusable failure to inquire, we affirm the decision of the Board.