**RELIABLE BUILDING MAINTENANCE CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–956C.**

United States Court of Federal Claims.

Aug. 3, 1994.

versed because the medical records are inconsistent. *See Cucuras*, 26 Cl.Ct. at 542.

Daniel Johnson, Jr., San Francisco, CA, for plaintiff.

Brad Fagg, Washington, DC, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, with whom was Martha H. DeGraff, Asst. Director, David M. Cohen, Director, and Stuart M. Gerson, Asst. Atty. Gen., for defendant.

## OPINION

SMITH, Chief Judge.

Plaintiff, Reliable Building Maintenance Company, seeks damages for breach of contract by the Air Force. The contract was for custodial services at Travis Air Force base, located in Travis, California. The dispute centers on the interpretation of a contract term referred to as "high dusting." The court finds that the defendant must prevail in

this case for two independent reasons. First, after examining the disputed contractual provision in light of the contract as a whole, as well as the facts, circumstances, and course of dealings between the parties, the court finds the contractual interpretation advocated by the government best reflects the true intent of the parties. Second, even *assuming arguendo* that the contract's "high dusting" provision is ambiguous, the court concludes the ambiguity was patent so that Reliable had a "duty to inquire," which it failed to do.

### Facts

In 1989, the Air Force awarded a contract for custodial services at Travis Air Force base to Reliable. The contract covered custodial services for most of the public buildings on the base. The contract contained the following provision:

### 1.1  Scope of Work

The contractor shall provide all personnel, equipment, tools, materials, supervision, and other items and services necessary to perform custodial services as specified in this Performance Work Statement (PWS) except as specified in Section C–3 as government furnished property and service at Travis AFB California. The contractor shall perform to the standards in this contract.

Subsequent provisions outline the specific custodial tasks which Reliable was obligated to perform. The present dispute centers on the contractual provisions which require Reliable to perform custodial services referred to as "high dusting" and "low dusting." The relevant contract provisions are the following:

5.2.1.7  *Perform Low Dusting*  The contractor shall perform Low dusting, so that after dusting, all dust, lint, litter and dry soil shall be removed from the surfaces of desks, chairs, file cabinets, and other types of office furniture and equipment and from ledges, window sills, hand rails, etc., *to a line 7'0" above the top of the floor level.* Typewriters, business machines, and equipment of similar nature shall not be dusted by the contractor. Personal and/or

decorative items on desks will not be touched by the contractor.

\* \* \* \* \* \*

5.2.2.1 The contractor shall perform high dusting, so that after dusting, all dust, lint, litter, and dry soil shall be removed from *all surfaces 7'0" above the top of the floor surface* to include venetian blinds, where installed. (emphasis added.)

Reliable argues that prior to 1988, and until some point in 1989, it understood the above task descriptions to require the removal of dust up to the seven-foot level but did not require dusting areas above seven feet. Reliable alleges it was first advised by defendant in 1989 that the contract required dusting above the seven-foot level, including the ceiling, pipes, and other fixtures. After initially disputing the government's interpretation of the high dusting requirement, Reliable demanded additional payment for the alleged increased costs required to perform "high dusting." In response to Reliable's demand, the government unilaterally modified the contract to eliminate the high dusting provision. Accordingly, the government deducted $56,143.33, from its payments to Reliable.[1] Reliable then brought this action, contending that it performed fully under the contract, and seeking recovery of the monies deducted by the government.

## Discussion

As with the interpretation of any contract, the court must first examine the language of the provision in question, and analyze the provision within the context of the entire contract. Contract ¶ 5.2.2.1 sets out the contractual requirements for high dusting. At trial, both parties argued forcefully that the high dusting provision was clear and unambiguous. Plaintiff argued that the language only required dusting up to seven feet, except for venetian blinds, which it conceded must be dusted regardless of height. Defendant argued that the language of the contract clearly required Reliable to dust above seven feet. However, neither of these interpretations is obvious *solely* from the language of the "high dusting" provision.[2] Nevertheless, a proper interpretation of a contract should give meaning to each provision, if possible, by viewing the contract as a whole, rather than rendering some provisions meaningless. *Steve Altman Photography v. United States,* 18 Cl.Ct. 267 (1989).

The proper interpretation of ¶ 5.2.2.1 is obvious when the contract is examined as a whole. Paragraph 5.2.1.7.—"Perform Low Dusting"—specifically describes the low dusting tasks, including that "after dusting, all dust, lint, litter and dry soil shall be removed from the surfaces of desks, chairs, file cabinets, and other types of office furniture and equipment and from ledges, window sills, hand rails, etc." Further, this provision specifically states that the low dusting tasks be performed "to a line 7'-0" above the top of the floor level." Thus, under the rubric of low dusting, the contract requires these specifically defined tasks to be performed under the seven foot level. Similarly, contract ¶ 5.2.2.1. lays out the requirements the contractor must meet in performing "high dusting." Both provisions refer to the seven-foot benchmark, and the contract's use of the "low" and "high" terminology is not without meaning. A common sense interpretation of the terms "low" and "high" leads to the logical conclusion that "high dusting" takes place at a greater distance above the floor

---

1. The contract states that the maximum payment percentage for high dusting throughout the term of the contract is to be 2%. This is the basis for the government's payment deductions.

2. The literal wording of this provision is either a model of poor drafting or, more likely, an example of how a typo creates a significant problem. At first glance, in requiring that dusting be performed only "from all surfaces 7'-0" above the top of the floor surface," the provision seems to require that high dusting take place only at levels precisely seven feet high—along a microscopically thin line at the seven foot level. Although this is a literal interpretation of the provision, such an interpretation is nonsensical and would not be derived from the contract language by a "reasonably intelligent person acquainted with contemporary circumstances." *Firestone Tire & Rubber Co. v. United States,* 444 F.2d 547, 195 Ct.Cl. 21, 30 (1971). In fact, neither plaintiff nor defendant argued for such a bizarre interpretation at trial. The intent of parties would have been better expressed and more clearly consistent with the term "high dusting" with the addition of one word to ¶ 5.2.2.1: "from all surfaces [*above*] 7'-0" above the top of the floor."

than does "low dusting," with the demarcation line, in this case, being the 7'–0" benchmark mentioned in both provisions. Thus, the arguable ambiguity in ¶ 5.2.2.1. is superficial, a result of poor draftsmanship, and does not impede the court's ability to discern the true intent of the parties.

■ Viewed in proper context, the high dusting provision logically requires dusting at a greater height than seven feet above the floor's surface. The court finds that such an interpretation is consistent with the contract when viewed as a whole, and reflects the true intentions of the parties. Reliable's argument that they never would have agreed to perform "high dusting" at the stated contract price would be stronger if all the buildings in question were massive aircraft hangers, or similar buildings with high ceilings that would require the use of scaffolding or similar equipment. To the contrary, the evidence at trial indicated that "high dusting" constituted a small portion of the work. It appears that very few of the buildings to be cleaned had ceilings substantially above seven feet. Moreover, Reliable actually performed some dusting above seven feet throughout the 1984 and 1989 contracts. In short, while the high-dusting provision is admittedly poorly drafted, it is evident to the court that the parties intended for high dusting to cover dusting above seven feet.

■ However, even *assuming arguendo* that the ¶ 5.2.2.1 of the contract is ambiguous so that the intent of the parties is not fairly discernable, the court concludes defendant still must prevail. Once a court deems a particular provision of a contract to be ambiguous, the general rule of *contra proferentum* construes that ambiguity against the drafter, unless it can be shown that the ambiguity was patently obvious to the contractor. *Newsom v. United States,* 230 Ct. Cl. 301, 303, 676 F.2d 647, 649 (1982). A patent ambiguity, which would give rise to a contractor's duty to make an inquiry, is "an obvious omission, inconsistency, or discrepancy of significance." *Beacon Construction Co. v. United States,* 161 Cl.Ct. 1, 314 F.2d 501, 504 (1963).

■ Although various criteria may be relevant in determining whether or not a particular ambiguity is in fact patent, "the ambiguity must be deemed patent, glaring or obvious" where a contractor's interpretation produces a conflict that cannot be reconciled with the plain meaning of another clause in the contract. *Solar Turbines International v. United States,* 3 Cl.Ct. 489, 497 (1983). If the court were to accept Reliable's interpretation of the "high dusting" provision an obvious inconsistency arises which cannot be reconciled with the "low dusting" provision of the contract. Reliable contends that the task descriptions in provision ¶ 5.2.2.1 (the high dusting provision) required the removal of dust up to 7'–0" above the surface of the floor and did not require Reliable to dust areas exceeding this height, including ceiling pipes and other attachments. These are exactly the tasks that ¶ 5.2.2.7, dealing with low dusting, covers. Such an interpretation would render the "high dusting" provision superfluous and meaningless. Under Reliable's interpretation of the contract, it is clear that between these two provisions a patent ambiguity in the draft needed to be clarified. Therefore, even *assuming arguendo* that ¶ 5.2.2.1 of the 1989 contract between Reliable and the government is ambiguous, the court finds the ambiguity is patent.

The existence of a patent ambiguity affirmatively obligates a contractor "to inquire of the contracting officer the true meaning of the contract prior to submitting the bid." *Newsom v. United States,* 230 Ct.Cl. 301, 303, 676 F.2d 647, 649 (1982). At no time prior to the 1989 contract, or its predecessor, the 1984 contract, did Reliable inquire about the meaning of this patently ambiguous provision. Accordingly, Reliable did not meet its duty of inquiry, and its claim must also fail under this analysis.

### Conclusion

For the reasons set forth above, the court finds the government's interpretation of the contract reflects the true intent of the parties. However, even assuming ¶ 5.2.2.1 is ambiguous, the court believes the ambiguity was patent so that Reliable had a duty to inquire, which it did not do. As a result, the

ambiguity cannot be construed against the government. Accordingly, the court must dismiss the plaintiff's claim.

IT IS SO ORDERED.