NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KD1 DEVELOPMENT, INC.**
*Appellant,*

v.

**MARTHA N. JOHNSON, ADMINISTRATOR,
GENERAL SERVICES ADMINISTRATION,**
*Appellee.*

---

2012-1160

---

Appeal from the Civilian Board of Contract Appeals in No. 2075, Administrative Judge Joseph A. Vergilio.

---

Decided: October 23, 2012

---

DOUGLAS C. LASOTA, Dickie, McCamey & Chilcote, P.C., of Pittsburgh, Pennsylvania, argued for the appellant. With him on the brief was BRETT W. FARRAR.

MICHAEL N. O'CONNELL, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were STUART F. DELERY, Acting

Assistant Attorney General, JEANNE E. DAVIDSON, Director, and HAROLD D. LESTER, JR., Assistant Director.

---

Before DYK, CLEVENGER, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

The Civilian Board of Contract Appeals ("Board") denied a claim by KD1 Development, Inc. ("KD1") asserting that under its lease, GS-03B-70059[1] with the General Services Administration ("GSA"), it is entitled to the sum of the rental rate and the operating costs rate (annually adjusted) and held that GSA was entitled to recover $216,762.00 in overpayments. *KD1 Dev., Inc., v. Gen. Servs. Admin.*, CBCA 2075, 11-2 BCA ¶ 34,843 (Sept. 20, 2011) ("CBCA Op."). Because the Board erred in interpreting the lease at issue and KD1, rather than GSA, is entitled to the compensation it seeks, we reverse and remand.

BACKGROUND

GSA sought to lease space in southwestern Pennsylvania for use by the Mine Safety and Health Administration. Accordingly, GSA issued a public solicitation, SFO No. MPA96182, that included a clause that specifies offerors must submit offers with the total gross annual price and a breakout of the base price and operating expenses:

(a) if annual CPI [Consumer Price Index] adjustments in operating expenses are included, Offerors are required to submit their offers with the

---

[1] There is at least one other lease agreement between KD1 and the General Services Administration ("GSA") that it not at issue on this appeal. *See* Joint Appendix ("J.A.") at 1.

total "gross" annual price per rentable square foot and a breakout of the "base" price per rentable square foot for services and utilities (operating expenses) to be provided by the Lessor. The "gross" price shall include the "base" price.

. . . .

(c) If the offer includes annual adjustments in operating expenses, the base price per occupiable square foot from which adjustments are made will be the base price for the term of the lease, including any option periods.

Joint Appendix ("J.A.") 185-186 ¶ 1.10. Offerors wishing to receive annual adjustments in operating costs were instructed to submit GSA Form 1217, which was used to determine the "base rate" for subsequent adjustments. J.A.190 ¶ 3.5. The solicitation further stated: "The base for the operating costs adjustment will be established during negotiations based upon occupiable square feet." *Id.* at ¶ 3.6.

In its initial and second offer KD1 indicated a total rate per square foot and submitted its operating costs on GSA Form 1217. The parties then agreed upon an annual operating cost base of $3.97 per square foot. In its third revised offer, KD1 listed the occupiable square footage, price per square foot, and total amount per year for the lease term; it also referenced the earlier submission for operating costs. "In its ultimate best and final offer, . . . [KD1] stated the occupiable square footage (9100 square feet), price per square foot ($17.47), and the total amount per year for the lease term ($159,000)." CBCA Op. at ¶ 4.

GSA and KD1 executed a lease agreement drafted by GSA. The lease provisions included the following pertinent parts:

3. The Government shall pay the Lessor annual rent of $ *(SEE LEASE RIDER PARA[G]RAPH 13)* at the rate of $ *(SEE LEASE RIDER PARAGRAPH 13* per *month* in arrears. Rent for a lessor period shall be prorated.

6. The Lessor shall furnish to the Government as part of the rental consideration, the following:

> A. All services, maintenance, repairs, utilities, alterations and other considerations as set forth in the lease.

> B. The provisions of SFO [solicitation for offers] #MPA96182 are to be provided without modification

*Id.* at ¶ 6. A supplement to the lease ("Lease Rider") contains additional terms. Paragraph eleven of the Lease Rider stated that the base rate for future adjustments to the operating cost is $3.97 per occupiable square foot. Paragraph thirteen of the Lease Rider provided that, after acceptance, the building would be measured as described in the solicitation and rent would be paid at $17.47 per occupiable square foot per year.

From the first payment in September 1998 through March 2006, GSA paid KD1 rent equal to the sum of the annual rent *and* operating cost base. As a result, GSA was paying an annual base rent of $158,977.00 per year (at a cost of $17.47 per square foot for 9100 square feet) and an annual operating rent of $36,127.00 (at a base cost of $3.47 per square foot for 9100 square feet) subject to escalation (for total annual rent of: $158,977.00 + $36,127.00 = $195,104.00).

In a letter dated March 16, 2006, a GSA officer sent KD1 a supplemental lease agreement, effective August 11, 1998, specifying an annual rate of $158,977.00 at the

rate of $13,248.08 per month in arrears. GSA followed with another letter dated April 5, 2006, explaining that there was an erroneous overpayment and requesting $272,969.26 in repayment (the amount of operating costs believed to have been double paid since August 1998). KD1 responded by letter dated April 26, 2006, stating that there was no such overpayment because all parties understood that the $3.97 for operating costs was intended to be paid in addition to the base rent.

Beginning April 2006, GSA made payments consistent with the total rental rate inclusive of operating costs, plus the escalation to the operating costs base ($122,850.00 + $36,127.00 = $158,977.00). After a series of correspondence, KD1 submitted a claim, on December 22, 2009, to the contracting officer contending that the operating rent was properly considered as an addition to the base rent. Additionally, KD1 requested payment of $110,000.00, the difference between the amount GSA paid beginning April 2006 through the end of the lease in August 2008 and the amount owed when the operating cost is considered an addition to the base rent. Furthermore, KD1 challenged GSA's right to recover $272,969.26 in overpayments. The contracting officer denied the claim in its entirety and reiterated GSA's right to recover $272,969.26 in overpayments from KD1 either directly, or by offsetting payments thereafter.

KD1 appealed to the Board. "In resolving cross-motions for summary relief, the Board held that the language of the lease supports [GSA's] interpretation, not that of [KD1], and that [GSA] could offset amounts due under the first lease against amounts payable under the second lease." CBCA Op. at 1. The Board allowed for further development of the record and then determined that "factually and legally" the written lease must be enforced such that the total lease rate and annual rent

includes operating costs, and the agreed upon operating costs base is used for annual adjustment purposes. *Id.* at 2. However, the Board determined the applicable statute of limitations confined GSA's recovery to those claims accruing within six years of when GSA first notified KD1 of its claim. Therefore, GSA's recovery was limited to $216,762.00 ($36,127.00 * 6 = $216,762.00), the amount of the duplicative operating cost payments made over six years. This timely appeal followed.

## DISCUSSION

We have jurisdiction over an appeal from a decision of a board of contract appeals under 28 U.S.C. § 1295(a)(10). We review the Board's findings of fact under a deferential standard; they will not be set aside unless they are fraudulent, arbitrary, capricious, rendered in bad faith, or not supported by substantial evidence. 41 U.S.C. § 7107(b) (2006); *see Gardiner, Kamya & Assocs., P.C. v. Jackson*, 369 F.3d 1318, 1322 (Fed. Cir. 2004). The Board's conclusions of law are reviewed *de novo. Andersen Consulting v. United States*, 959 F.2d 929, 932 (Fed. Cir. 1992).

The interpretation of a contract is a question of law, and we determine without deference whether there is ambiguity in the language. *States Roofing Corp. v. Winter*, 587 F.3d 1364, 1368 (Fed. Cir. 2009). We begin by examining the plain language of the contract and determining if it can reasonably be interpreted in more than one way; if so, an ambiguity exists. *LAI Servs., Inc. v. Gates*, 573 F.3d 1306, 1314 (Fed. Cir. 2009). "[W]hether ambiguities are latent or patent and whether the contractor's interpretation thereof is reasonable are also questions of law subject to *de novo* review." *Interwest Constr. v. Brown*, 29 F.3d 611, 614 (Fed. Cir. 1994).

We first determine whether the lease is susceptible to more than one reasonable meaning and is therefore

ambiguous. "To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term. Rather, both interpretations must fall within a 'zone of reasonableness.'" *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin*, 169 F.3d 747, 751 (Fed. Cir. 1999) (quoting *WPC Enters., Inc. v. United States*, 323 F.2d 874, 876 (Ct. Cl. 1963).

The parties dispute whether, under the lease, the base rental rate of $17.47 per square foot is inclusive of operating costs of $3.97 per square foot. The relevant provisions of the lease and the lease rider specifies the annual rent, applicable rates, and incorporated unit costs. Paragraph three of the lease requires: "The Government shall pay the Lessor annual rent of $ *(SEE LEASE RIDER PARA[G]RAPH 13)* at the rate of $ *(SEE LEASE RIDER PARAGRAPH 13)* per *month* in arrears. Rent for a lessor period shall be prorated." J.A.286. Paragraph eleven of the Lease Rider provides: "For purposes of determining the base rate for future adjustments to the operating cost, the Government agrees that the base rate quoted on the 'Lessor's Annual Cost Statement' (GSA Form 1217), dated *March 5, 1997*, at *$3.97* per occupiable square foot, is acceptable." *Id.* at 288. Paragraph thirteen of the Lease Rider states: "Upon acceptance of the leased premises by the Government, the same shall be measured and rental shall be paid, in accordance with Paragraph 3.7 of Solicitation *MPA96182*, 'Occupiable Space' and Paragraph 22 of the General Clauses, GSA Form 3517, 'Measurement for Payment' at the rate of *$17.47* per occupiable square foot per year." *Id.* at 289.

KD1 argues that the lease should be interpreted to require a fixed base rent of $17.47 per square foot for a ten-year term plus an additional $3.97 per square foot annually adjustable operating cost. In particular, KD1 argues that Paragraph thirteen does not comply with the

requirement of the lease at Paragraph three because it does not state the annual and monthly rent rendering the pertinent provisions of the lease ambiguous.

GSA disagrees, contending that the Board correctly held that "[t]he lease rate is a total (or gross) rate inclusive of operating costs." CBCA Op. at 9. GSA asserts that the plain language is unambiguous, citing to the solicitation. The solicitation required offerors "to submit their offers with the total 'gross' annual price per rentable square foot and a breakout of the 'base' price per rentable square foot for services and utilities (operating expenses) to be provided by the Lessor. The 'gross' price shall include the 'base' price." J.A.185, ¶ 1.10(a).

Although the cited language from the solicitation supports GSA's interpretation of the lease, it is not clearly part of the lease entered into by the parties. Paragraph six of the lease agreement refers to the provisions of the solicitation (SFO #MPA96182): "The Lessor shall furnish to the Government as part of the rental consideration, the following: . . . . B. The provisions of SFO #MPA96182 are to be provided without modification." J.A.287. However, Paragraph seven of the lease contradicts that provision, stating: "The following are attached and made a part hereof: . . . B. SFO #96182, as amended (26 pages)"[2] *Id.* Attached to the lease however, and therefore incorporated therein are paragraphs three through eight of the solicitation. J.A.291-313. The language GSA cited from Paragraph 1.10(a) of the solicitation is *not* incorporated into the lease. Paragraph 1.10(a) is accordingly extrinsic

---

[2] The pages attached are labeled "SFO #MPA96182," thus the omission of "MPA" in reference to the solicitation in paragraph seven is assumed to be a typographical error.

evidence not considered when determining if the lease is ambiguous.

The plain language of the lease is susceptible to more than one meaning. Neither the lease nor the lease rider states a total gross price. Paragraph thirteen of the lease rider directs "Measurement for Payment" at the rate of *$17.47* per occupiable square foot per year, J.A.289, but does not indicate whether the operating costs of $3.97 per occupiable square foot, as set forth in paragraph eleven, is included therein. While Paragraph thirteen states that the $17.47 per square foot is payment "in accordance with" the "occupiable space" paragraph of the solicitation, it makes no mention of Paragraph 3.5 and 3.6 of the solicitation, which concern payment for operating costs. Because the lease does not specify a total gross rate, and the rate of $17.47 per occupiable square foot may either be inclusive or exclusive of operating costs, the lease is ambiguous.

To aid in interpretation of an ambiguous lease one looks to extrinsic evidence. *Metro. Area Transit, Inc. v. Nicholson*, 463 F.3d 1256, 1260 (Fed. Cir. 2006). "[T]he parties' own course of performance is highly relevant to contract interpretation." *Id.* As noted, Paragraph 1.10(a) of the solicitation indicates that the total gross price shall include the base price, and tells offerors to breakout from the total gross price a base price for operating costs. KD1's offer described $17.47 per occupiable square foot as the "total" square foot rate per year and did not mention operating costs. Additionally, GSA provided certification of available funds for the first year of the lease in the amount of $158,977.00, signed by the contracting officer and a realty specialist. J.A.272. Those extrinsic facts support GSA's lease interpretation. However, at the time of the first payment under the lease GSA's own financial and real estate management system was for a base rent of

$158,977.00 and an additional operating rent of $36,127.00. J.A.355. GSA made payments accordingly for eight years. The parties' course of performance reflects KD1's interpretation of the language of the lease. Because the specification and the parties' course of performance support opposing and ambiguous interpretations, the extrinsic evidence is of limited assistance in interpretation of the relevant lease provisions.

An ambiguity is either patent or latent. *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1162 (Fed. Cir. 2004). "A patent ambiguity does not exist where the ambiguity is neither glaring nor substantial nor patently obvious." *States Roofing*, 587 F.3d at 1372 (internal quotation marks omitted). "Where an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent and the general rule of *contra proferentem* applies," *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004), "which requires that a contract be construed against the party who wrote it," *Newsom v. United States*, 676 F.2d 647, 649 (Ct. Cl. 1982). Although *contra* proferentem is a rule of last resort, *Gardiner, Kamya & Assocs., P.C. v.* Jackson, 467 F.3d 1348, 1352 (Fed. Cir. 2006), other interpretive approaches do not resolve the ambiguity here. The ambiguity at issue cannot be patent because GSA paid under the lease for eight years before issuing a supplemental lease agreement purporting to clarify the lease terms and annual rent. *See* J.A.395-97 ("Paragraph 3 of Standard Form 2 of the Lease is hereby amended by deleting the existing text in its entirety and replacing with the following: '3. The Government shall pay the Lessor annual rent of $158,977.00 at the rate of $13,248.08 per month in arrears.'"). Thus, the ambiguity is latent and the lease must be construed against the GSA which drafted it. Accordingly, the decision of the Board is erroneous.

CONCLUSION

For the foregoing reasons, we conclude that the Board erred in determining that the rate stated in Paragraph thirteen of the lease rider was inclusive of the operating costs specified in Paragraph eleven. Therefore, KD1 is entitled to recover the payment withheld by the GSA, and the GSA is not entitled to offset its alleged overpayments by reducing its payments under the second lease. Accordingly, we reverse the decision of the Board and remand the case to the Board for a determination of the amount of compensation to which KD1 is entitled.

**REVERSED and REMANDED.**

No costs.