ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                  )
                                      )

Korte Construction Company     )    ASBCA No. 63148
                                        )

Under Contract No. W912BV-19-C-0017   )

APPEARANCE FOR THE APPELLANT:      Michael E. Wilson, Esq.
                                          Greenfelder, Hemker & Gale, P.C.
                                          St. Louis, MO

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                           Engineer Chief Trial Attorney
                                          Lauren M. Williams, Esq.
                                          Thomas R. Alford, Esq.
                                          Engineer Trial Attorneys
                                          U.S. Army Engineer District, Tulsa

OPINION BY ADMINISTRATIVE JUDGE STINSON
ON APPELLANT'S MOTION FOR RECONSIDERATION

Appellant Korte Construction Company (Korte) requests reconsideration of our October 26, 2023, decision granting the government's motion for summary judgment and denying appellant's motion for summary judgment. *Korte Constr. Co.*, ASBCA No. 63148, 23-1 BCA ¶ 38,454. Korte appealed a contracting officer's final decision denying Korte's claim challenging the government's entitlement to a credit in the amount of $493,639.43, for a deductive change to the contract work. We granted the government's motion for summary judgment, finding that Korte and its subcontractor recognized pre-award an ambiguity or discrepancy in the solicitation regarding whether certain work was required to be performed, and that Korte failed to fulfill its duty to seek clarification from the government pre-award regarding that work. Familiarity with that decision is presumed. For the reasons stated below, appellant's motion for reconsideration is denied.

DISCUSSION

"Motions for reconsideration do not afford litigants the opportunity to take a 'second bite at the apple' or to advance arguments that properly should have been presented in an earlier proceeding." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014). Reconsideration may be appropriate, however, "if we made mistakes in our findings of fact or conclusions of law, or [failed] to consider an appropriate matter." *Supreme Foodservice GmbH*, ASBCA No. 57884 *et al.*, 20-1 BCA ¶ 37,716

at 183,090 (citation omitted). "[I]f we have made a genuine oversight that affects the outcome of the appeal, we will remedy it." *Relyant, LLC*, ASBCA No. 59809, 18- 1 BCA ¶ 37,146 at 180,841.

## I. *Appellant's Contentions*

Korte alleges that the Board erred (1) "by failing, as required by well-established law on the interpretation of government contracts, to consider the requisite initial step for determining whether an ambiguity exists, to wit: is each party's contract interpretation within the 'zone of reasonableness'" (app. mot. at 2), (2) "by concluding that the record establishes that an ambiguity exists" (*id*.), and (3) by "failing to consider and by failing to correctly apply the following controlling Federal Acquisition Regulation (FAR) clause: 'In case of difference between drawings and specifications, the specifications shall govern.' FAR 52.236-21" (*id*.).

## II. *The Board Did Not Err or Fail to Apply Well-Established Law Governing Interpretation of Government Contracts*

Appellant argues in its motion for reconsideration that the Board "summarily concluded that the solicitation documents were ambiguous regarding whether chilled water improvements were required," and "did not undertake the initial requisite step in contract interpretation, i.e., ascertaining whether each party's interpretation falls within the 'zone of reasonableness'" (app. mot. at 4). According to appellant, there existed "no ambiguity because the Government's interpretation does not fall with the 'zone of reasonableness'" (app. mot. at 21 n.10).

### a. *Contract Interpretation*

Our decision did not "summarily" conclude that the chilled water improvements requirements were ambiguous. Rather our decision included a lengthy statement of facts relevant to the contractual issues raised by the parties, as well as the parties' positions regarding those facts. *Korte*, 23-1 BCA ¶ 38,454 at 186,901-906 (SOF ¶ 6 (Korte's subcontractor's understanding of the RFP), SOF ¶ 9 (RFP specification requirements), SOF ¶ 10 (addition of new RFP Phase 2 specification paragraph 4.5.6, requiring that the contractor "[e]xtend the base wide chilled water, hot water, and compressed air piping to the slab edge of the hangar. Provide connection location for future projects"),[1] SOF ¶¶ 11-13 (RFP Phase 2 schematic drawings depicting three

---

[1] Korte argued in its response to the government's motion for summary judgment that appellant's subcontractor conducted an "investigation of pre-existing utility lines at Tinker AFB," and "confirmed via available base documents that no base-wide or campus chilled water system or hot water system existed …." (app. resp. at 43; *see also Korte*, 23-1 BCA ¶ 38,454 at 186,905 (SOF ¶ 34)).

parallel lines labeled "CW"), SOF ¶ 22 (Korte's RFP Phase 2 Proposals which included annotated drawings contained in the solicitation with three parallel lines labeled "CW"), SOF ¶¶ 32-34 (Korte's subcontractor's interpretation of the RFP requirements), SOF ¶ 38 (Korte's August 24, 2021, claim admitting knowledge of the ambiguity discovered during development of Korte's pricing, stating, "since there is no base wide chilled water system, terms purporting to extend such a non-existing system are obviously the product of a scrivener's mistake—one which was recognized during the development of Korte's pricing—and cannot have any force and effect")).

Our decision likewise considered the parties' legal arguments. *Korte*, 23-1 BCA ¶ 38,454 at 186,907. On the merits, we found "it is undisputed the RFP Phase 2 specification included a new paragraph 4.5.6, which required the contractor to '[e]xtend the base wide chilled water, hot water, and compressed air piping to the slab edge of the hangar. Provide connection location for future projects.'" *Id.* at 186,908 (citing SOF ¶ 10). We likewise found "[t]here is no legitimate dispute that the RFP Phase 2 documents included reference to chilled water piping, i.e., contract drawings with three parallel lines running east to west labeled 'CW,'" *id*. at 186,908 (citing SOF ¶¶ 13, 22), and that Korte's "attempt to downplay the import of the reference to 'CW' on certain contract drawings" because of their size or difficulty in reading them on the drawings "does not excuse appellant from attempting to understand its import, nor does it somehow cast the information as less important or less relevant than other, larger markings or information set forth on the drawings." *Id*. at 186,910 (citing *Natkin and Co*., ASBCA Nos. 26072, 29071, 84-2 BCA ¶ 17,469 at 87,044 (where contract drawings are "difficult to read" it is incumbent upon the contractor to resolve "the matter by inquiry prior to submitting its proposal")).

Noting appellant's argument that "[t]here was simply no good reason to extend chilled water piping from the slab edge of the hangar per the above-quoted SOW … when there was no apparent need for chilled water piping in the first place," and that "**it was absurd to read the SOW statement as extending something that was non-existent**," *id*. at 186,908 (citing app. mot. at 27) (emphasis in original), we held that "Korte's chosen course of action - to simply ignore the import of the actual language that Korte's viewed as 'absurd' - in no way justifies Korte's decision to make no inquiry regarding the meaning of the new specification paragraph 4.5.6, or the government's reference in that specification to 'future projects.'" *Id*. We likewise held that "[t]he record establishes that Korte's subcontractor recognized pre-award an ambiguity in the solicitation documents regarding installation of chilled water lines, although rather than seeing a relatively limited set of ambiguities, chose (and, let there be no mistake, it was a choice) to interpret the contract to its benefit." *Id*. (citing SOF ¶¶ 6, 32-34, 38; app. resp. at 9; app. reply at 21); *see also Id*. at 186,908 (app. reply at 9-10 (citing app. resp. at 53-54)) ("Jarrell Mechanical [appellant's mechanical subcontractor] reviewed the solicitation documents and concluded that chilled water improvements were not required"). Korte's interpretation of the contract, which

simply ignored a patent ambiguity or discrepancy in the solicitation, was inherently unreasonable. *See E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004) (contractor reliance upon specification containing patent defect unreasonable in context of request for equitable adjustment).[2]

   b. *Appellant Was Well Aware of an Obvious Ambiguity or Discrepancy in the RFP Prior to Award and Failed to Seek Clarification from the Government*

Appellant argues that the Board "did not undertake the initial requisite step in contract interpretation, i.e., ascertaining whether each party's interpretation falls within the 'zone of reasonableness'" (app. mot. at 4). Appellant cites *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 751 (Fed. Cir. 1999), for the proposition that "[t]o show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term. Rather, both interpretations must fall within a 'zone of reasonableness'" (app. mot. at 5). In *Metric Constructors*, however, the contractor, unlike here, was not aware of the contractual ambiguity pre-award, which became apparent to the parties only after award. *Id.* The contractor interpreted the contract as requiring it to replace "only defective, burned out, or broken lamps immediately before project completion," while the government interpreted the contract as requiring the contract to replace "all lamps, known as 'relamping' in the industry, before project completion." *Id.* at 749. As explained by the Federal Circuit, "[t]he parties discovered their divergent views when NASA performed a 'walkdown' of the project on September 20, 1993." *Id.*[3] The court then held that the specifications were ambiguous, that the specifications were "susceptible to two different reasonable interpretations," and that the ambiguity was latent. *Id.* at 753-54.

Here, it is undisputed that Korte and its subcontractor were both aware of the ambiguity prior to award and chose to ignore it. Indeed, appellant's subcontractor concluded that certain requirements set forth in the specifications were "poorly worded and unbiddable" and that the specification provision referencing chilled water improvements was "poorly written . . . since there's no base wide chilled water or no base wide hot water, and we knew that at the time." *Korte*, 23-1 BCA ¶ 38,454

---

[2] Korte incorrectly suggests that our decision somehow recognized "that Korte's interpretations are reasonable" (app. reply at 11). To the contrary, it was inherently unreasonable for Korte and its subcontractor to, on the one hand interpret the specifications as containing a "scriveners mistake" that rendered a portion of the specifications "impossible of performance" and "plainly superfluous," and on the other hand decide not to seek clarification from the contracting officer regarding that specification prior to award. *Korte*, 23- 1 BCA ¶ 38,454 at 186,908, 186,910.

[3] The contract in *Metric Constructors* was awarded on February 15, 1991. 169 F.3d at 748.

4

at 186,905 (SOF ¶ 33).[4]  In its brief in response to the government's motion for summary judgment, appellant admitted that the appeal "'represents one of those atypical, if not rare, instances where the scrivener included words that, considering the circumstances, are impossible of performance and cannot be given any sensible meaning in the context of this project,' labeling the reference to 'chilled water' in paragraph 4.5.6 as 'plainly superfluous.'" *Korte*, 23-1 BCA ¶ 38,454 at 186,910 (citing app. resp. at 42).  As we held in our decision, given Korte's understanding of the RFP pre-award, "appellant was not . . . free to simply ignore the specification provision it considered superfluous." *Korte*, 23-1 BCA ¶ 38,454 at 186,910 (citing *Santa Fe Eng'rs, Inc.*, ASBCA Nos. 22090, 22194, 79-1 BCA ¶ 13,647 at 66,967 ("A basic tenet of contract interpretation is that every effort must be made to give meaning to each provision and not to accept an interpretation which will render any part of the contract meaningless, inexplicable or render it useless or superfluous.  These factors should have caused appellant to question the reasonableness of its interpretation and to have sought clarification from the contracting officer")).

Our decision is based upon the well-established government contract principle that "[t]he doctrine of contra proferentem does not apply where the contractor knew of the alleged ambiguity before submitting its bid." *Korte*, 23-1 BCA ¶ 38,454 at 186,908 (citing *James A. Mann, Inc. v. United States*, 210 Ct. Cl. 104, 122, 535 F.2d 51, 61 (1976) (the degree to which an ambiguity was "patently obvious" or "not glaring" is irrelevant where the contractor was aware of the ambiguity prior to submitting its bid)).  Where a contractor is actually aware of an ambiguity prior to submitting its bid—as Korte was here—determining whether each parties' interpretations fall within a "zone of reasonableness" is not an "initial requisite step" in determining whether the contract is ambiguous.  Rather, such a determination is superfluous. *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985) ("The existence of a patent ambiguity in the contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation").[5]

---

[4] Appellant's subcontractor also stated that the "unbiddable and very poorly worded" specification provision was "a leftover from the Phase One RFP before they changed it from base wide system to independent systems." *Korte*, 23-1 BCA ¶ 38,454 at 186,905 (SOF ¶ 33).  As we found in our initial decision, however, that specification provision was not a "leftover" requirement from the Phase 1 RFP but instead was a new provision "added to the solicitation requirements with issuance of RFP Phase 2." *Korte*, 23-1 BCA ¶ 38,454 at 186,909 (citing SOF ¶ 9).

[5] Korte cites several recent ASBCA decisions which recognize the proposition "that '**[e]ach** interpretation must fall within a 'zone of reasonableness'''" (app. reply at 4-5) (emphasis by appellant) (citing *Vigor Works, LLC*, ASBCA No. 62607, 23-1 BCA ¶ 38,293 at 185,916; *CJW Contractors, Inc.*, ASBCA No. 63228, 23- 1 BCA ¶ 38,272 at 185,825; and *Munck Asfalt A/S*, ASBCA No. 61497,

In our initial decision, we cited *Newsom v. United States*, 230 Ct. Cl. 301, 304, 676 F.2d 647, 650 (1982), for the proposition that "[t]he existence of a patent ambiguity in itself raises the duty of inquiry, regardless of the reasonableness vel non of the contractor's interpretation…. The court may not consider the reasonableness of the contractor's interpretation, if at all, until it has determined that a patent ambiguity did not exist." *Korte*, 23-1 BCA ¶ 38,454 at 186,909. In its motion for reconsideration, appellant attempts to downplay the significance of *Newsom*, stating only that *Newsom* is a "patent ambiguity case[] and therefore distinguishable" (app. mot. at 19). However, other than labeling *Newsome* a patent ambiguity case, appellant does not explain why it is "therefore distinguishable" (*id*.).

As the Court of Claims held in *Newsom*, whether an ambiguity is patent "is not a simple yes-no proposition but involves placing the contractual language at a point along a spectrum: Is it so glaring as to raise a duty to inquire?" 230 Ct. Cl. at 304, 676 F.2d at 650. That duty requires the contractor to "inquire of the contracting officer the true meaning of the contract before submitting a bid." *Newsom*, 230 Ct. Cl. at 303, 676 F.2d at 649. Here, we found the ambiguity was glaring, as appellant and its subcontractor were well aware of it prior to award. *Korte*, 23-1 BCA ¶ 38,454 at 186,901, 186,905-06 (SOF ¶¶ 6, 32-34, 38). Similar to the facts presented here, the Court of Claims in *Newsom* noted the contractor's acknowledgment "that the contract is not internally consistent" and that the contractor's "interpretation explains the reason for the inconsistency but does not eliminate it." *Newsom*, 230 Ct. Cl. at 305, 676 F.2d at 650-51.

Appellant argues, "we are aware of no case that holds that when the contract cannot be reasonably construed to require something that, as it turns out, the Government subjectively wants but does not objectively specify, the contractor must nevertheless investigate to ascertain what the Government wants by requesting 'clarification'" (app. mot. at 19-20). That is not the factual situation presented here. As we held in our initial decision, the government expressly stated via a revision to the RFP Phase 2 specifications, that the contractor shall "[e]xtend the base wide chilled water, hot water, and compressed air piping to the slab edge of the hangar. Provide connection location for future projects." *Korte*, 23-1 BCA ¶ 38,454 at 186,908 (citing SOF ¶10). Korte states it determined pre-award there existed no base wide chilled water system, yet chose to not inquire from the government what was meant by this *new specification provision* referencing such a system. The Court of Claims held long ago that when a contractor "is presented with an obvious omission, inconsistency, or discrepancy of significance, he must consult the Government's representatives if he

21- 1 BCA ¶ 37,934 at 184,241). However, none of those decisions involve the situation presented here where the contractor recognized *pre-award* the discrepancy or ambiguity in the RFP yet failed to inquire from the contracting officer about that discrepancy.

6

intends to bridge the crevasse in his own favor." *Beacon Constr. Co. of Mass. v. United States*, 161 Ct. Cl. 1, 7, 314 F.2d 501, 504 (1963); *Interstate Gen. Gov't Contractors, Inc. v. Stone*, 980 F.2d 1433, 1436 (Fed. Cir. 1992) (quoting *Newsom*, 230 Ct. Cl. at 304, 676 F.2d at 650) ("Although we do not wish to penalize a contractor because of a contract that was poorly drafted by the government, the very fact that this contract is patently ambiguous places a burden on the contractor to seek clarification of its rights and obligations before bidding. The ambiguity here is 'so glaring as to raise a duty to inquire.'"). That same principal applies equally here.

III. *The Board Correctly Found that the Record Established the Existence of Contractual Ambiguity*

As discussed above in Section II, the contract contained an ambiguity that appellant and its subcontractor recognized prior to award. Much of appellant's motion for reconsideration addresses the reasonableness of the parties' respective contract interpretations, restating facts and repeating prior arguments presented in its motion for summary judgment (app. mot. at 7-21). Although Board Rule 20 allows for the filing of a motion for reconsideration, such a motion "is not intended to provide a party with the opportunity to reargue its position." *Robinson Quality Constructors*, ASBCA No. 55784, 09-2 BCA ¶ 34,171 at 168,911. To the extent appellant questions our fact finding, we have reviewed our decision and are not persuaded that it was in error.

IV. *The Board Correctly Applied FAR 52.236-21*

Appellant argues that we failed to consider and correctly apply FAR 52.236-21, which dictates that "[i]n case of difference between drawings and specifications, the specifications shall govern" (app. mot. at 2). According to appellant, "[a]ssuming arguendo that three particular lines on Drawing CU101 were supposed to designate chilled water lines, the FAR instructs that when the requirements between the drawings and specifications differ, the specifications govern" (*id*.). Appellant then alleges that Drawing CU101 conflicts with the specification's requirement that the contractor "extend the base wide chilled water system," because that "specification was impossible to perform" (*id*.).

Our decision expressly quoted the above portion of FAR 52.236-21(a) cited by appellant, as well as the additional requirement that "[i]n case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer" for a determination, and that "[a]ny adjustment by the Contractor without such a determination shall be at its own risk and expense." *Korte*, 23-1 BCA 38,454 at 186,902 (SOF ¶ 16). We stated that "[a]ppellant's failure to inquire is compounded by the solicitation's inclusion of FAR 52.236-21, which, in case of discrepancies in the drawings or specifications, requires the contractor to promptly notify the contracting officer in writing and that '[a]ny adjustment by the

Contractor without such a determination shall be at its own risk and expense.'" *Id.* at 186,911.

Relying upon the language of FAR 52.236-21, we stated,

> that the order of precedence clause here provides that in the event there is a difference between the drawings and the specifications, the specifications shall govern (SOF ¶16). Here, the provision requiring the contractor to "[e]xtend the base wide chilled water, hot water, and compressed air piping to the slab edge of the hangar," and "[p]rovide connection location for future projects" is set forth in the RFP Phase 2 specifications (SOF ¶10). Accordingly, any argument that appellant could ignore the import of that specification provision in the context of determining the contract requirements is misplaced.

*Korte*, 23-1 BCA 38,454 at 186,914 n.6. Appellant's suggestion that it was free to ignore detail set forth in the contract drawings (under the guise of the specifications governing over the drawings) because it had determined a requirement of the specification was impossible to perform, is in contravention of the requirement set forth in FAR 52.236-21(a) that the contractor must raise with the contracting officer any such discrepancies in the drawings or specifications.

Appellant's reliance upon our decision in *Kiewit Constr. Co*., ASBCA No. 43154, 92-1 BCA ¶ 24,681 at 123,127 (app. mot. at 22), is misplaced. In that appeal, the Board held that certain work set forth in a specification's general requirements was included as work to be performed by another contractor under "schedule A" and not work to be performed by the appellant under "schedule B," even though contract drawings suggested otherwise. *Kiewit*, 92-1 BCA ¶ 24,681 at 123,127. Here the *specification* set forth a requirement which appellant determined was impossible to perform. If appellant believed that the requirement set forth in the specifications was impossible to perform, it had a duty to inquire from the government about its belief. As we held in our original decision, appellant failed to carry out that duty. *Korte*, 23-1 BCA ¶ 38,454 at 186,910.

CONCLUSION

For the reasons stated above, appellant's motion for reconsideration is denied.

Dated: May 6, 2024

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur                                    I concur

OWEN C. WILSON                      MICHAEL N. O'CONNELL
Administrative Judge                  Administrative Judge
Acting Chairman                        Vice Chairman
Armed Services Board                 Armed Services Board
of Contract Appeals                   of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63148, Appeal of Korte Construction Company, rendered in conformance with the Board's Charter.

Dated: May 6, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

9